Clarence WENZY III, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–00171–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 29, 1993.

Discretionary Review Refused
Sept. 15, 1993.

Henry L. Burkholder, III, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a conviction for aggravated robbery. Although this was Appellant Wenzy's first felony, the jury gave him life imprisonment and a $10,000 fine. Wenzy complains of ineffective assistance of counsel. We reverse.

On an afternoon in June 1991, two men robbed a gas station at gunpoint. Police arrested Clarence Wenzy and his brother Maurice. The men retained Michael Cato as defense counsel. Maurice was tried first, from February 4 through 7, 1992. A jury convicted Maurice, sentenced him to seventy-five years, and imposed a $10,000 fine.

On February 12, five days before Clarence's trial, Cato filed a motion to withdraw on grounds that Clarence had fired him. On February 17, the day of trial, Cato filed and presented a supplemental motion to withdraw in which he argued that State Bar Rules required that he withdraw because (1) he was discharged, and (2) his mental or psychological condition materially impaired his fitness to represent Wenzy. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(a)(2) & (3) (1990), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1993) (STATE BAR RULES art. X, § 9). The trial court denied the consolidated motions. At the end of the State's voir dire, Cato again moved to withdraw. The trial court denied the motion. Cato did conduct voir dire but then failed to cross-examine any of the State's witnesses. After the State's case-in-chief, Cato again moved to withdraw. Wenzy took the stand out of the presence of the jury and expressed dissatisfaction with Cato because of what had happened in his brother's case. The trial court denied the motion. Cato put on no witnesses or evidence for the defense and waived final argument.

During the punishment phase of trial, Cato put Wenzy on the stand and qualified him for probation. On cross-examination,

without objection by Cato, the State inquired into numerous other aggravated robberies allegedly committed by Clarence and Maurice. Cato's final argument in the punishment phase consisted of the statement: "Ladies and gentlemen, my comments to you will be very brief. Mr. Clarence Wenzy requests that you grant him probation in this matter. Thank you."

We note that Clarence Wenzy included in his appellate record the statement of facts from the trial of his brother, Maurice. However, we confined our review to the record of Clarence's trial. *See Evans v. State,* 622 S.W.2d 866, 868 (Tex.Crim.App. 1981).

In point of error one Wenzy complains that the trial court erred in failing to permit Cato to withdraw prior to trial.

▆▆▆ An attorney may not withdraw without the permission of the trial court. *Ward v. State,* 740 S.W.2d 794, 797 (Tex. Crim.App.1987). The decision whether to permit a counsel to withdraw is within the trial court's sound discretion. *Green v. State,* 840 S.W.2d 394, 408 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993). We will not disturb that decision absent an abuse of discretion. *See id.*

▆▆▆ On January 31 Wenzy filed a motion to substitute retained-counsel Cato for his court-appointed counsel, "whose substitution will not cause undue delay in these proceedings." The trial court granted the motion to substitute on February 4. Cato filed his motion to withdraw on February 12, only five days before trial, and supplemented it on the day of trial. Wenzy never signed or expressly joined in Cato's written motions to withdraw. He never requested the court to appoint another attorney, informed the trial court that he had retained another attorney, or requested additional time to secure other retained counsel. Wenzy did not ask permission to proceed *pro se.*

▆▆▆ The right of a defendant to obtain counsel of his own choice must be balanced with a trial court's need for prompt and efficient administration of justice. *Chil-*

*dress v. State,* 794 S.W.2d 119, 121 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). We find that the trial court did not abuse its discretion in denying Cato's motions to withdraw. We overrule point one.

In points two and three Wenzy complains of ineffective assistance of counsel in that Cato refused to take an active role in his defense.

▆▆▆ Wenzy was entitled to effective assistance of counsel. U.S. CONST. amend. VI & XIV. To win an ineffective assistance of counsel claim, Wenzy must show that (1) Cato's representation was deficient, falling below an objective standard of reasonableness, and (2) Wenzy suffered prejudice, i.e., there was a reasonable probability that, but for Cato's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). We presume that Cato's performance was competent. Wenzy must rebut this presumption by proving that Cato's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). We will not second-guess Cato's actions through hindsight. Nor will we deem his performance ineffective merely because another attorney might have pursued a different course. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). We assess Cato's performance by the "totality of the representation." *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

Under *Strickland,* we first ask whether Cato's representation of Wenzy was unreasonable under prevailing professional norms and was not sound trial strategy.

Cato stated in his written motion to withdraw that he had been "instructed to immediately cease all representation of [Wenzy]." During voir dire he told the court that he had not arranged to have any of the defense witnesses present since he an-

ticipated being released. At the end of the State's case, Cato informed the court:

> I am required to withdraw in a situation where I've been fired by my client with or without cause or whenever my mental or psychological condition impairs my ability to represent him further. In this situation, Your Honor, both these conditions are present, my client, Mr. Wenzy, continues to insist that I have been discharged and that I am no longer his attorney of record, therefore, it's apparent to me that he does not want me here, if he does not want me here, I don't want to be here to represent him....

At the hearing on Wenzy's motion for new trial, Cato testified:

> With respect to ... the trial of Mr. Clarence Wenzy, that conduct was not based on strategy.... I contended both pretrial, and during the trial, ... that I had been fired ... before the trial had begun. And, so, therefore, I was put in the posture of being placed with someone who really didn't want me. He expressed this from the witness stand, that he didn't want me on his case. And, therefore, it was not a matter of strategy in terms of me not aggressively cross-examining witnesses or putting on any defense. I had nothing, as far as I was concerned, I had [been] fired. That was the situation I found myself in.

■ Under point of error one we held that the trial court did not abuse its discretion in denying Cato's motions to withdraw. Once his motions to withdraw were denied, Cato was under a duty to represent Wenzy to the fullest of his ability. TEX.DISCIPLINARY R.PROF.CONDUCT 1.15(c) (1990). "[A]n attorney who represents a criminal defendant is 'bound by professional duty to present all available evidence and arguments in support of [the client's] positions and to contest with vigor all adverse evidence and views.'" *Thomas v. State*, 550 S.W.2d 64, 68 (Tex.Crim.App.1977), quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 787, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973).

Cato abrogated this duty. He did not cross-examine any of the State's witnesses. He did not call any defense witnesses or put on any evidence. He waived final argument.

> That a person who happens to be a lawyer is present at trial alongside the accused ... is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's *playing a role* that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who *plays the role* necessary. to ensure that the trial is fair.

*Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063 (emphasis added).

■ The State argues that Cato's non-performance was "sound trial strategy" designed to achieve an appellate reversal on a claim of ineffective assistance of counsel. First, for purposes of the *Strickland* test, we refuse to hold that purposefully injecting error into a trial is ever *"sound* trial strategy." Second, Cato's statements on the record indicate that he consciously withheld services because he considered himself fired by Wenzy. But TEX.DISCIPLINARY R.PROF.CONDUCT 1.15(c) (1990) states, "When ordered to [represent a client] by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Cato's statements and his non-performance at trial reflect more an egregious lack of professional responsibility than a conscious effort to plant error.

■ Furthermore, we find that the State is estopped from alleging purposeful injection of error. At Wenzy's hearing on motion for new trial, the prosecutor testified to a conversation with Cato during a break in the trial. The prosecutor testified that he understood Cato to say that his non-participation in the trial was a matter of trial strategy, i.e., to inject some error into the trial. However, the record is void of any effort by the State to bring this matter to the trial court's attention at time of trial. The trial court could have ordered Cato to provide the fullest possible representation under the circumstances with or

without the cooperation of Wenzy. *Thomas, supra.* The trial court could have enforced its orders with sanctions or contempt if necessary. We further note that the trial court did not take corrective action *sua sponte* despite what must have been an obvious absence of defense advocacy.

We find that Cato's representation of Wenzy was constitutionally deficient in that Cato did not play the adversarial role contemplated by the Sixth Amendment.

 We next ask whether Wenzy suffered prejudice because of Cato's unprofessional performance.

In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.... [S]uch circumstances involve impairment of the Sixth amendment right that are *easy to identify* and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

*Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (emphasis added).

Cato's admitted refusal to defend Wenzy was easy to identify. While the State may not have been directly responsible, it took no action to correct the problem. In this circumstance, we presume prejudice.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. We find that Wenzy did not get a fair trial and sustain points of error two and three.

In point four Wenzy complains of ineffective assistance of counsel during the punishment phase of trial, where counsel failed to object to the admission into evidence of extraneous unadjudicated robbery offenses.

 Wenzy was entitled to effective assistance of counsel at the punishment phase of trial. The test on review is reasonably effective assistance. *Ex parte*

*Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App. 1987).

Wenzy argues that Cato did not object to the State's questioning of Wenzy regarding some fourteen unadjudicated extraneous offenses. He claims that it was well-established at the time of trial that unadjudicated extraneous offenses were inadmissible at the punishment phase of trial.

In fact, the law was *not* settled at that time, this court being one of the appeals courts to hold that such offenses were admissible if otherwise relevant. *Compare, e.g., Cannon v. State,* 807 S.W.2d 631, 635 (Tex.App.—Houston [14th Dist.] 1991, no pet.) with *Blackwell v. State,* 818 S.W.2d 134, 141 (Tex.App.—Waco 1991, pet. ref'd). It wasn't until *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Crim.App.1992), that the Court of Criminal appeals cleared the air by holding that:

[E]ven if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence, and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(a)'s definition of prior criminal record.

*Id.* at 523 (emphasis in original) (footnotes omitted). TEX.CODE CRIM.PROC. art. 37.07 § 3(a) (Vernon Supp.1993) defines "criminal record" as final convictions.

Consequently, at Wenzy's punishment phase of trial, the State attempted to introduce arguably admissible evidence. We decline to hold that Cato's failure to object constituted deficient representation, even though another lawyer might have sought to take greater advantage of the unsettled state of the law. We overrule point four.

Having sustained Wenzy's points of error two and three, we reverse the judgment below and remand the cause for a new trial.