Retha Jeanette BACEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–97–00111–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 6, 1998.

Decided Feb. 17, 1999.

320

Gary W. Smith, Greenville, for appellant.

F. Duncan Thomas, Dist. Atty. of Hunt County, Greenville, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Retha Jeanette Bacey appeals her conviction for capital murder. A jury found Bacey guilty, and she was sentenced to life in prison.

In eight points of error, Bacey contends (1) the trial court erred in failing to sustain her timely objection to inflammatory and prejudicial photographs; (2) the trial court erred in holding the evidence sufficient to sustain the conviction, when the prosecution depended upon the testimony of two witnesses who were accomplice witnesses and whose testimony was not corroborated; (3) the trial court erred in holding the evidence sufficient to sustain the conviction, when the testimony of an accomplice witness was only corroborated by the testimony of another accomplice witness; (4) the trial court erred in holding the evidence sufficient to sustain the conviction, when the testimony of an accomplice witness was only corroborated by proof of Bacey's mere presence at the scene of the crime; (5) the trial court erred in failing to respond to Bacey's timely requested special charge and instruction on accomplice testimony; (6) Bacey received ineffective assistance of counsel when defense counsel failed to schedule a hearing on her motion for new trial within a seventy-five-day period, thereby having the motion for new trial overruled by operation of law; (7) the

trial court erred in failing to set Bacey's motion for new trial within the seventy-five-day period; and (8) the trial court erred in holding that it had no jurisdiction to consider Bacey's motion for new trial after the expiration of the seventy-five-day period.

Shortly before midnight on November 8, 1995, Bruce Hudson found Kenneth Bradfield's body in a ditch near a residential street in Hunt County, Texas. Prior to the time Hudson found Bradfield, residents in the area reported hearing two series of gunshots.

At approximately the same time, Rebecca Kay Lowery, a neighbor, was coming home from a friend's house. After turning down the street where she lived, Lowery's path was blocked by another car. The car was occupied by an African–American male and an African–American female. Lowery testified that the car was dark green or black and looked like a Datsun 280ZX. Lowery stopped. The man got out of the other car, walked to the front of Lowery's car, and said something like, "I have to take a leak." Then, the man walked over to the ditch next to the car. The female backed the car up so Lowery could pass. When Rebecca Lowery got home, her husband asked her if she had heard any shots. Lowery said she had not heard any.

Michael Lowery, Rebecca Lowery's husband, testified that he awoke to the sound of gunshots. He got up and looked down the street and saw two cars, one of which proceeded past the other. The second car belonged to his wife. Michael Lowery testified that before Rebecca could get to their driveway, he heard another series of shots.

Another resident, Bruce Hudson, also said he awoke to the sound of gunshots around 11:45 p.m. Hudson testified that he heard two series or sets of shots, each containing three or four shots. Hudson also said he saw taillights of a vehicle at the intersection of his street. Hudson drove down his street to investigate and found Bradfield's body in a ditch next to the street.

Kenny Kaye Hudson, Bruce Hudson's wife, testified that she awoke to the sound of dogs barking around 11:45 p.m. She got up and walked to her bedroom window and saw a car parked close to the intersection. Kenny Kaye also saw another car come down her street. She testified that this car had to stop because the other car was blocking its way. The first car backed up and the other car went by. Within a few seconds of the second car heading up the street, Kenny Kaye saw four or five flashes of light on the passenger's side of the first car near the ditch. Then, she saw the hatch of the car close and the car being backed up and leaving. After Bruce found Bradfield's body, Kenny Kaye called the police.

Representatives of the Hunt County Sheriff's Office conducted an initial investigation of the scene and returned the next morning. Bradfield's body was taken to the medical examiner's office in Dallas where an autopsy was performed. The medical examiner's office determined Bradfield's identity and notified the Hunt County Sheriff's Office.

The Hunt County Sheriff's Office asked the manager of Bradfield's apartment building to secure Bradfield's apartment from entry by any person. Retha Jeanette Bacey, Bradfield's roommate, asked for permission to enter the apartment to get her belongings. Both James Perry and Richard Hill, deputies with the Hunt County Sheriff's Office, met Bacey at the apartment. Bacey was accompanied by a friend, Rochelle Brown. Deputies Perry and Hill noticed that Bacey's car fit the description of the vehicle seen by residents on the night of Bradfield's death.

Perry and Hill took written statements from Bacey and her friend, Brown. Later, Deputies Perry and Hill obtained additional statements from Bacey and Brown with the help of Texas Ranger William Beenie. Brown told the deputies that Bacey had

contacted James Germany, also known as "Black" or "Dunk," to kill Bradfield. Germany had grown up in DeKalb with Bacey, and, at the time Bacey contacted him, he lived in New Boston. Bacey also implicated Germany in the death of Bradfield.

The police arrested Germany and searched his apartment. Three pistols were found: a Lorcin 9 mm, a Lorcin .380, and another pistol that did not function. Raymond Cooper, a firearm and tool-mark examiner at the Southwestern Institute of Forensic Science in Dallas, testified that two guns were used to shoot Bradfield. Cooper testified that the caliber on one of the guns was a .380 and the caliber on the other was a 9 mm. Germany testified Bacey had a .380 in her pocket on the trip to Commerce, Texas, during which Bradfield was killed. Germany had a .32 and a 9 mm.

Germany accepted a plea bargain, reducing his offense from murder to conspiracy to commit murder, and agreed to testify for the State in its case against Bacey. His punishment was assessed at fifteen years in the Texas Department of Criminal Justice, Institutional Division.

Rochelle Brown testified that she was present during a conversation when Germany and Bacey were discussing how they were going to get Bradfield to go with them to Commerce in order to kill him. Germany testified that Brown was supposed to go with Bacey and him to Commerce but decided not to go.

On Monday, November 6, 1995, Bacey and Brown left Dallas and drove to DeKalb to pick up Germany. They returned to Dallas that night. On Wednesday, November 8, 1995, Bacey, Germany, and Bradfield left Dallas in a dark green Nissan 240SXSE and headed for Commerce. Germany testified that he and Bacey told Bradfield that Germany was a student at East Texas State University in Commerce and needed a ride back to school.

*Germany testified to the following version of events leading to Bradfield's murder.* Near the intersection of Interstate 30 and Highway 50, Germany asked Bacey to turn off the road so he could use the bathroom. Germany testified that Bacey and Bradfield were standing in front of the Nissan smoking a marihuana cigarette when Bacey shot Bradfield three times. Germany testified that Bacey said she was not sure Bradfield was dead. Then a car drove up. Germany, who was sitting in the car at the time Bacey shot Bradfield, got out of the car and told the driver of the other vehicle that he needed to relieve himself. Bacey backed up the car, and the other car drove by. (The other car belonged to Rebecca Lowery). Germany then shot Bradfield five times and put the pistol in the rear hatch of the car. Germany testified that Bacey took Bradfield's wallet and then threw it out along Interstate 30 as they headed back to Dallas.

*Bacey testified to the following version of events leading to Bradfield's murder.* Bacey testified that Bradfield and Germany were going to buy drugs in Commerce for resale in Dallas. Bacey testified that as they headed to Commerce, the mood in the car became unfriendly. Bacey was driving. Germany asked Bacey to turn off the road so he could go to the bathroom. Bacey testified that she stayed inside the car. Bradfield was riding in the front seat and Germany was riding in the back seat, so Bradfield had to get out of the car in order to let Germany out. Bacey testified that Germany shot Bradfield several times. Then, a car drove up and Germany waved them past while acting like he needed to relieve himself. After the other car passed by, Germany shot Bradfield several more times. Bradfield was shot ten times. Germany got back in the car, put the gun to Bacey's head, and told her not to "freeze up." Bacey testified that Germany took Bradfield's wallet and threw it out along Interstate 30.

Bacey was indicted for capital murder on December 13, 1996, was arraigned, and entered a plea of not guilty on December 23, 1996. The State decided not to seek

the death penalty. Trial to a jury began on April 7, 1997. The jury returned a guilty verdict on April 22, 1997, and the trial court sentenced Bacey to life in prison the same day. Bacey filed a motion for new trial on May 21, 1997, and a hearing was set for July 24, 1997. At that hearing, the trial court held that it had no jurisdiction over the motion for new trial because the motion had already been overruled by operation of law on July 8, 1997.

■ In her first point of error, Bacey contends that the trial court erred when it failed to sustain her timely objection to inflammatory and prejudicial photographs (State's Exhibits 22 and 28) showing Bradfield after his death. Bacey contends that these photographs were cumulative of other photographs introduced and, as such, their probative value was substantially outweighed by their prejudicial effect.

■ Rule 403 of the Texas Rules of Evidence [1] requires an admissible photograph to possess some probative value and that its probative value not be substantially outweighed by its inflammatory nature.[2] Relevant factors in making this determination include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up shots, whether the body is naked or clothed, the availability of other means of proof, and other circumstances unique to the individual case.[3] Further, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible.[4] The admissibility of photographs over an objection is within the sound discretion of the trial judge.[5]

Exhibit 22 is a photograph of Bradfield from the waist down, showing his hands, pants, socks, and shoes. Clear bags cover his hands. (Bags are often placed on a decedent's hands to preserve any evidence which may be underneath the fingernails.) Bacey contends that Exhibit 22 provides no evidence relevant to the crime charged. The State contends that Exhibit 22 is a continuation of Exhibit 21, which shows the upper half of Bradfield's body, and that when combined, the two exhibits depict the condition of the decedent's entire body.

Exhibit 28 is a photograph of Bradfield's neck, head, and shoulders. Bacey contends it is cumulative of other photographs. The State contends that Exhibit 28 is not cumulative because the wounds depicted are more apparent and identifiable than in other admitted exhibits.

■ While Exhibit 22 may not show the wounds inflicted, it does show a stain on the decedent's sock and does give the jury a picture of the decedent's body in its entirety. Exhibit 28 depicts the wounds inflicted and their general location and position. The decedent is fully clothed in both exhibits. Neither Exhibit 22 nor Exhibit 28 is gruesome, and neither exhibit is an exact duplicate of any other exhibit. Exhibit 28 is not cumulative in that it is unlike the other admitted exhibits that depict the head because it is a close-up of the head, neck, and shoulders. When there are two or more pictures that depict the same thing but from different perspectives, the jury can gain information it might not otherwise have when viewing other pictures from other perspectives. Bacey has not shown that the prejudicial impact of State's Exhibits 22 or 28 out-

**1.** TEX.R.CRIM. EVID. 403. TEX.R. EVID. 401. At the time Bacey went to trial in 1997, the Texas Rules of Criminal Evidence applied. On March 1, 1998, the Texas Rules of Criminal Evidence and the Texas Rules of Civil Evidence were replaced by the Texas Rules of Evidence, which now apply to all cases going to trial after March 1, 1998.

**2.** *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim.App.1991).

**3.** *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim.App.1995).

**4.** *Long*, 823 S.W.2d at 272 n. 18.

**5.** *Sonnier*, 913 S.W.2d at 518.

weighed their probative value. This point of error is overruled.

■ In her second, third, and fourth points of error, Bacey contends that both Germany and Brown are accomplice witnesses and that the State failed to corroborate Germany's and Brown's testimony with other evidence. As part of her fifth point of error, which will be addressed more fully below, Bacey contends that the trial court erred in failing to instruct the jury that Brown was an accomplice. This argument will be addressed along with the discussion on her second, third, and fourth points of error. At the close of the State's case in chief, Bacey moved for an instructed verdict based upon insufficient evidence and the failure of the State to corroborate the accomplice witness testimony. At the close of Bacey's case, she also moved for an instructed verdict for the same reasons.

■ An accomplice is a person who has been a participant in the alleged crime either before, during, or after its commission.[6] The participation must include some form of an affirmative act committed by the witness to promote the commission of that offense.[7] When the evidence clearly shows the witness committed an affirmative act in furtherance of the crime,[8] or when the witness was indicted for the same offense as the accused,[9] then the court must instruct the jury that the ac-

complice witness's testimony must be corroborated with other evidence that tends to connect the accused with the commission of the crime. If a fact question exists on whether a witness is an accomplice, it is proper to submit that factual issue to the jury.[10] A witness is not an accomplice merely because he or she knew of the offense and did not disclose it, or even conceal it.[11] In the absence of an affirmative act, the witness cannot be an accomplice.[12] No affirmative act is committed if one agrees to participate in the commission of an offense and later does not.[13]

■ Article 38.14 of the Texas Code of Criminal Procedure states that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.[14] The general policy behind the accomplice witness rule is that the accomplice is a discredited witness, and his testimony is to be carefully scrutinized because the accomplice may have an interest in the outcome of the trial and may be a corrupt source.[15]

■ The test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascer-

6. *McFarland v. State,* 928 S.W.2d 482, 514 (Tex.Crim.App.1996) (citing *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App.1986)); *Moron v. State,* 779 S.W.2d 399 (Tex.Crim.App.1985); *Villarreal v. State,* 576 S.W.2d 51 (Tex.Crim.App.1978).

7. *McFarland,* 928 S.W.2d at 514 (citing *Kunkle,* 771 S.W.2d at 441).

8. *See Ashford v. State,* 833 S.W.2d 660, 664 (Tex.App.-Houston [1st Dist.] 1992, no pet.).

9. *Selman v. State,* 807 S.W.2d 310, 311 (Tex. Crim.App.1991) (citing *Harris v. State,* 790 S.W.2d 568, 579 (Tex.Crim.App.1989)).

10. *Tran v. State,* 870 S.W.2d 654, 656–57 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (citing *Kunkle,* 771 S.W.2d at 439).

11. *Kunkle,* 771 S.W.2d at 439.

12. *See McFarland,* 928 S.W.2d at 514; *Kunkle,* 771 S.W.2d at 440.

13. *Ferguson v. State,* 573 S.W.2d 516 (Tex. Crim.App.1978).

14. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979).

15. *Beathard v. State,* 767 S.W.2d 423, 429 (Tex.Crim.App.1989); *Brosky v. State,* 915 S.W.2d 120, 137 (Tex.App.-Fort Worth 1996, pet. ref'd).

tain if there is evidence which tends to connect the accused with the commission of the offense.[16] The nonaccomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt.[17] Nor is it necessary for the nonaccomplice evidence to directly link the accused to the commission of the offense.[18] The accomplice witness rule is satisfied if there is some nonaccomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment.[19] Mere presence of a defendant at the scene of the crime is insufficient to corroborate accomplice testimony.[20] The corroboration must corroborate a fact which tends to connect the appellant to the killing, not just prove details of the accomplice's testimony.[21]

Bacey argues that Brown's testimony should not have been used to corroborate Germany's testimony and that the testimony of both Germany and Brown should have been corroborated by other evidence to support the conviction. The State contends that Brown was not an accomplice witness and, therefore, her testimony was not subject to the accomplice witness rule. The State also contends the purpose of Brown's testimony was to corroborate Germany's testimony as an accomplice witness. The State asserts that even if this Court found Brown to be an accomplice witness, other evidence was sufficient to connect Bacey with the commission of the offense.

Bacey argues that Brown was an accomplice witness because (1) she was aware of the plan to kill Bradfield, (2) she participated in the conversation in which the scheme to kill Bradfield was developed, (3) she believed Germany and Bacey would kill Bradfield, (4) she took a cordless phone from the apartment Bradfield and Bacey shared, thus reaping a benefit from the commission of the crime, and (5) she was going to accompany Germany and Bacey on the trip that would result in Bradfield's death, but she decided not to go at the last minute.

Brown was present when Germany and Bacey discussed how they were going to get Bradfield to ride with them to Commerce. Brown testified that she listened to what story they (Bacey and Germany) were going to use to get Bradfield to ride with them. Brown said she may have added a couple of things to the conversation.

Brown was also present during a telephone conversation between Bacey and Germany. Brown testified that Bacey called Germany and asked whether he was "still going to do it" (kill Bradfield). However, Brown testified that she did not talk to Germany. Germany testified that Brown was to go to Commerce with him, Bacey, and Bradfield, but decided not to go. Germany testified that Brown had no physical involvement with Bradfield's killing.

Brown was not indicted for Bradfield's murder. She testified that she was arrested in Dallas and taken to Greenville, the county seat of Hunt County, where the crime occurred. Brown was not booked into jail, was not fingerprinted, was not bonded out, and was not interviewed. Instead, the police took her to her parents' home in Ladonia and released her.

The fact that Brown knew about the crime, failed to disclose it, or even concealed it does not make her an accom-

**16.** *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997) (citing *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988)).

**17.** *Hernandez,* 939 S.W.2d at 176 (citing *Reed,* 744 S.W.2d at 126).

**18.** *Hernandez,* 939 S.W.2d at 176.

**19.** *Hernandez,* 939 S.W.2d at 176 (citing *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App. 1994)); *Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App.1992); *Gosch v. State,* 829 S.W.2d 775, 777 (Tex.Crim.App.1991).

**20.** *Beathard,* 767 S.W.2d at 428.

**21.** *Id.*

plice.[22] While Brown was aware of the plan, there was no evidence that she participated in the plan to kill Bradfield, nor did she participate in the murder itself. Brown was in Dallas when the murder occurred. Believing that Germany and Bacey would kill Bradfield does not make Brown an accomplice witness. Brown did not reap a benefit from Bradfield's death when she took the cordless phone because Bacey testified that everything in the apartment belonged to her except Bradfield's clothes, a dinette set, a television, a stereo, and an end table. Based on this testimony, the telephone belonged to Bacey and not to Bradfield. Brown's testimony that she added a couple of things to the conversation was not explained. The statement is neutral, and we cannot speculate on the substance of Brown's additions to the conversation.

In the absence of undisputed evidence of an affirmative act on Brown's part or an indictment for Bradfield's murder, the jury should not have been instructed that Brown was an accomplice. The trial court did not err in failing to give Bacey's requested instruction that Brown was an accomplice.

■ In her fifth point of error, Bacey contends that the trial court erred in failing to instruct the jury that Brown was an accomplice witness because the evidence raised a fact issue as to Brown's status as an accomplice witness. To determine if the evidence raised an issue on Brown's status as an accomplice, we must determine if there is some evidence that Brown committed an affirmative act in furtherance of the crime.[23] By her own admission, Brown said she knew she and Bacey were going to pick up Germany and bring him back to Dallas so Germany could help Bacey kill Bradfield. Brown drove the Nissan to DeKalb to pick up Germany

and also drove on the way back to Dallas while Bacey slept in the back seat. If the jury believed Brown's testimony that they went to get Germany so he and Bacey could kill Bradfield, then Brown's driving to DeKalb and back to Dallas was an affirmative act that aided in the commission of the crime.

On the other hand, Bacey testified that she and Brown went to DeKalb because she was asked to go there by someone. Bacey denied going to get Germany because she and Germany were involved in a plan to kill Bradfield. If Bacey was not involved in a plan to kill Bradfield and she and Brown went to pick up Germany because Bacey was asked to, then Brown's driving of the car was not an affirmative act that would have aided in the commission of the crime.

This conflict in testimony by Brown and Bacey is enough to raise a fact issue on whether Brown committed an affirmative act in furtherance of the crime.[24] The trial court committed error when it failed to give Bacey's requested instruction that the jury was to determine whether Brown was an accomplice and consider Brown's testimony in accordance with its determination.

■ Next, we will consider whether the trial court's error was harmful. When preserved jury charge error affects rights guaranteed by the United States Constitution, we must apply the harmless error rule enunciated by the United States Supreme Court, which is the same standard set out in Texas Rule of Appellate Procedure 44.2(a).[25] An accomplice evidence instruction is not required by the United States Constitution. It is required by Article 38.14 of the Code of Criminal Procedure. In that situation, the Texas harmless error rule controls, and reversal is required if the error was calculated to

---

**22.** *Kunkle,* 771 S.W.2d at 439.

**23.** *See McFarland,* 928 S.W.2d at 514; *Kunkle,* 771 S.W.2d at 440.

**24.** *Ashford,* 833 S.W.2d at 665.

**25.** *See* Tex.R.App. P. 44.2(a); *Tran,* 870 S.W.2d at 658.

affect Bacey's substantial rights.[26] This means no more than there must be some harm to the accused from the error.[27] Reversal is not required if the error is harmless.[28] The defendant has the burden to show that he suffered some actual harm from the charging error.[29] The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole.[30]

The purpose of the accomplice witness rule is to assure that a jury does not consider accomplice evidence unless the jury finds both that the accomplice is telling the truth and that other evidence corroborates the accomplice.[31] A proper charge would have required the jury to determine if Brown was an accomplice, and if the jury so found, it would have been instructed to disregard Brown's testimony unless the jury believed it was both true and corroborated.[32]

If the evidence, excluding Brown's testimony was so strong that any reasonable jury would have found it to be true, or if the jury did not rely on Brown's testimony to convict, then the error was harmless.[33]

We now turn to the evidence which tends to connect Bacey with the crime to determine if the error was harmful.

■ Corroboration may come from the testimony of the accused.[34] Evidence that the accused was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction. While presence in the company of an accomplice near the time of the offense is not alone conclusive, it is an important factor for corroboration.[35] Presence coupled with other suspicious circumstances may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.[36] Proof that connects the accused to a weapon similar to that used in the offense is another circumstance to be considered[37] and evidence showing motive or opportunity can also be considered, in connection with other evidence tending to connect the accused with the crime.[38]

Evidence excluding Brown's testimony that tends to connect Bacey with the offense:

(1) Rebecca Lowery testified the car blocking the road was a dark color, dark green, or almost black and looked like a Datsun 280ZX, or that type of car. Bacey

**26.** *See* Tex.R.App. P. 44.2(b); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *see also Posey v. State,* 966 S.W.2d 57, 61 (Tex.Crim.App.1998).

**27.** *Almanza,* 686 S.W.2d at 171.

**28.** *Id.*

**29.** *Tran,* 870 S.W.2d at 658 (citing *Belyeu v. State,* 791 S.W.2d 66, 75 (Tex.Crim.App. 1989)).

**30.** *Almanza,* 686 S.W.2d at 171.

**31.** *Tran,* 870 S.W.2d at 658.

**32.** *See id.*

**33.** *See id.*

**34.** *Simmons v. State,* 650 S.W.2d 108, 110 (Tex.App.-Houston [14th Dist.] 1983, no pet.).

**35.** *Hernandez,* 939 S.W.2d at 178 (citing *Jackson v. State,* 745 S.W.2d 4, 13 (Tex.Crim.App. 1988)). *See also Killough v. State,* 718 S.W.2d 708, 710 (Tex.Crim.App.1986). In *Killough,* the court held an accused's presence at the crime scene is not alone sufficient to support a conviction, although it is a circumstance to be considered in tending to prove guilt. *Killough,* 718 S.W.2d at 711.

**36.** *Richardson v. State,* 879 S.W.2d 874 (Tex. Crim.App.1993).

**37.** *Hernandez,* 939 S.W.2d at 178 (citing *Cockrum v. State,* 758 S.W.2d 577, 582 (Tex.Crim. App.1988) (stating "[E]ven evidence that a defendant had a gun which was merely similar to the murder weapon may corroborate accomplice testimony.")).

**38.** *Hernandez,* 939 S.W.2d at 179 (citing *Paulus v. State,* 633 S.W.2d 827, 846 (Tex.Crim. App. [Panel Op.] 1981)).

drove a dark green Nissan 240SXSE that belonged to Bradfield. The Nissan fit the description of the car Lowery saw at the scene of the crime, and Bacey was driving it the morning after the murder. Lowery also observed an African–American female that met Bacey's general description, a light-skinned black female, driving the vehicle at the scene.

(2) Bacey testified that she was present at the time Bradfield was killed and moved the car so Lowery could get by. This statement shows more than her mere presence.

(3) Raymond Cooper, a firearm and tool-mark examiner at the Southwestern Institute of Forensic Science in Dallas, testified two guns were used to shoot Bradfield. Cooper testified the caliber on one of the guns was a .380 and the caliber on the other was a 9 mm. Steven Bradfield, the decedent's brother, testified that Bradfield owned a Lorcin .380 pistol and that he loaned a Lorcin 9 mm to Bradfield about two months before his death. Bacey testified that Bradfield gave her a .380 pistol to keep in the glove compartment of the Nissan. Bacey testified the gun was missing from the glove compartment on the morning of the murder. Bacey had access to two guns of the same caliber used in the commission of the murder because she lived with Bradfield and carried a .380 in the glove compartment of the Nissan. The neighbors heard two sets of shots. Germany testified that Bacey gave him the guns to sell or get rid of after the murder. This testimony is corroborated and tends to connect Bacey with the commission of the offense because the police found a Lorcin .380 and a Lorcin 9 mm in Germany's apartment.

(4) Bacey testified that when she and Bradfield argued, it was primarily about Rochelle Brown, and Bradfield did not like her spending time with Brown. Bacey testified that she and Bradfield were having problems prior to the murder and had talked about breaking up. However, they talked and decided to give their relationship another chance. After this conversation, Bacey went to Brown and told Brown her free ride was over (that Bacey would no longer buy her things and give her money) and that Bacey could no longer "hang out" with Brown. Bacey testified that Bradfield did not like her hanging out with Brown or any of her girlfriends. There is evidence showing Bacey had a motive to kill Bradfield because of these problems in their relationship with each other and her relationship with Brown.

(5) Six days prior to the murder, Bradfield filled out a dispute form with one of his credit card issuers disputing charges Bacey had made to his credit card. He said he did not make the charges and to "do want (sic) you have to do to the person who made these charges in my name." According to Bacey's testimony, Bacey did not have a credit card and often used charge cards belonging to Bradfield. Bradfield paid for the apartment they shared, the car she used, and her car insurance. Bradfield had been upset with her in the past for overspending.

(6) The police took a voluntary written statement from Bacey that was not the result of custodial interrogation two days after the murder. In the statement, she told police that she was with Brown all night and the next morning after the murder. She did not tell the police she was with Germany and Bradfield when the murder occurred. She also said she called the place where Bradfield worked the morning after the murder and a man named Regie told her Bradfield had not reported for work. She said she paged Bradfield and called around to see if anyone had heard from him. Later, during trial, Bacey testified she paged Bradfield even though she knew he would not answer the page. Bacey also testified she talked to several of Bradfield's family members the day after the murder, and she told them she did not know Bradfield's whereabouts. This evidence indicates an attempt to cover up her knowledge of the crime and presence at the crime scene

creating an inference of involvement in the crime.

(7) Kenny Kaye Hudson, a resident of the neighborhood where the murder took place, testified she saw the hatchback of the car open after she heard the second set of shots. Germany testified *Bacey opened the hatchback* and he put the gun he had in his possession in the trunk. Hudson's testimony corroborates Germany's testimony. During trial, Bacey testified that Germany had a gun or guns ·on his lap and that he put a gun to her head and told her to drive.

Taken together, rational jurors could conclude that evidence excluding Brown's testimony sufficiently tended to connect Bacey with the commission of the crime.[39] We conclude that this evidence was so strong that any reasonable jury could have used it to convict. The trial court's error in failing to give Bacey's requested instruction that the evidence raised a fact issue on Brown's status as an accomplice was not harmful. Points of error two, three, four, and five are overruled.

■ In her sixth point of error, Bacey contends that defense counsel was ineffective for failing to schedule a hearing on her motion for new trial within the seventy-five-day period required by Rule 31(c)(1) (currently Rule 21.6) of the Texas Rules of Appellate Procedure.[40] Bacey argues her trial counsel's failure to schedule a hearing on her motion for new trial deprived her of an opportunity to present newly discovered evidence, which she contends would have changed the outcome of the trial.

■ The proper standard for determining claims of ineffective assistance of counsel under the Sixth Amendment is the standard adopted by the United States Supreme Court in *Strickland v. Washington.*[41] The Court of Criminal Appeals adopted the *Strickland* standard in *Hernandez v. State.*[42] The standard of review that Bacey must demonstrate is 1) that her lawyer's performance was deficient, i.e., that the lawyer made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment; and 2) that the deficient performance prejudiced the defense because the errors were so serious that they deprived the defendant of a fair trial.[43] Appellate courts will engage in a strong presumption that counsel's performance was reasonable.[44] The guarantee of effective assistance does not guarantee errorless counsel whose competency or accuracy of representation is judged with the perception of events after they have occurred.[45] The *Strickland* test must be proven by Bacey by a preponderance of the evidence.[46] The second prong

---

39. *Hernandez,* 939 S.W.2d at 179.

40. Tex.R.App. P. 31(c)(1) (Tex. and Tex.Crim. App.1986, amended 1997) (currently found at Tex.R.App. P. 21.6). In her brief, Bacey cites this Court to the prior rule of appellate procedure. The amended rules took effect September 1, 1997. The rules govern appeals then pending, except to the extent that in the opinion of the court, their application in a particular proceeding then pending would not be feasible or would work an injustice, in which case, the former procedure may be followed. Bacey went to trial in April 1997 and her appeal was pending at the time the new rules of appellate procedure took effect. There is no substantive difference in the prior rules to which Bacey cites this Court and the present rules. We will cite to both in order to avoid confusion on the reader's part.

41. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

42. 726 S.W.2d 53, 55–57 (Tex.Crim.App. 1986).

43. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

44. *Patrick v. State,* 906 S.W.2d 481, 495 (Tex. Crim.App.1995); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994); *Taylor v. State,* 947 S.W.2d 698, 703 (Tex.App.-Fort Worth 1997, pet. ref'd).

45. *Ex parte Prior,* 540 S.W.2d 723, 726 (Tex. Crim.App.1976); *Taylor,* 947 S.W.2d at 703.

46. *Patrick,* 906 S.W.2d at 495; *Taylor,* 947 S.W.2d at 703.

of the *Strickland* test is met by a defendant showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[47] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[48] Defense counsel's performance is assessed by the totality of the representation.[49]

Bacey's motion for new trial was based on the failure of the trial court to charge and instruct the jury that Rochelle Brown was an accomplice witness, the need for corroboration of her testimony, and on a letter allegedly written and sent to Bacey by Germany after her sentencing. Bacey contends the letter raises doubts about the truth of Germany's testimony at trial. She also contends the letter meets the four-part test for newly discovered evidence set forth in *Carlisle v. State.*[50] The relevant portion of the letter states:

> When I get my time, I'll do that and no more lies. We can never change the past, but we can try and make it right. I'm sorry for what I did to you and I hope that you forgive me one day. Tessy, I'm gonna do everything I can to make it right I promise. The truth has to be told. I realize that one day I got a date dealing with fate. I just hope God don't close the gate. If I could change, I would, but I can't better yet I won't. It's all about you now and I'll do what you asked me to. I've been hurting cause you are hurting. I don't want you to hurt anymore. Let's just hope and pray that the truth helps.

Black

Bacey directs this Court's attention to *Sambrano v. State,*[51] where a motion for new trial was granted on the basis of newly discovered evidence when the State's main witness admitted lying under oath during the appellant's trial.[52] *Sambrano* is distinguishable from the instant case because the State's main witness confessed under oath in a subsequent trial that he had deliberately lied while under oath during the appellant's trial.

The State contends there was no evidence that the letter allegedly written by Germany is genuine or material. Assuming arguendo that Germany did write the letter, he does not admit shooting Bradfield ten times, nor does he state or imply that he planned the murder by himself. Nothing in the letter exonerates Bacey from guilt. While Germany does say the truth has to be told, he does not say what that truth is. The letter meets the first two prongs of the *Carlisle* test, but it does not meet the second two prongs of the test. Bacey must show that Germany's statement in the letter would probably bring about a different result at another trial and that it is competent, and not merely impeaching. Bacey has not shown this Court that the letter was written by Germany or that it exonerates her from guilt.

Bacey's counsel had a duty to assure that her motion for new trial was timely heard so that prejudice to Bacey would not arise from the motion being overruled by operation of law. However, Bacey has

47. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

48. *Id.; Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986).

49. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Wenzy v. State,* 855 S.W.2d 47, 49 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

50. 549 S.W.2d 698 (Tex.Crim.App.1977). Bacey contends Germany's letter meets the criteria for the granting of a new trial set forth in

*Carlisle v. State:* 1) the evidence was unknown to the movant before trial; 2) the failure to discover the evidence was not due to the appellant's want of diligence; 3) its materiality was such that it would probably bring about a different result on another trial; and 4) that it is competent, not merely cumulative, corroborative, collateral, or impeaching. *Id.* at 704.

51. 754 S.W.2d 768 (Tex.App.-San Antonio 1988, pet. dism'd).

52. *Id.* at 769.

failed to show by a preponderance of the evidence a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bacey's motion for new trial based on newly discovered evidence does not undermine confidence in the outcome because Bacey has not shown that the letter is genuine or material. Bacey does not complain about counsel's pretrial actions nor about counsel's actions during the trial. In viewing the totality of the representation, trial counsel's actions were not ineffective. This point of error is overruled.

■ In her seventh point of error, Bacey contends that the trial court erred in failing to set her hearing on motion for new trial within the seventy-five-day period required by Rule 31(e) (currently Rule 21.8) of the Texas Rules of Appellate Procedure.[53] Bacey contends that, although her attorney requested a hearing date beyond the seventy-five-day period required, the trial court should have ordered a hearing date within the seventy-five-day period. Bacey filed a timely motion for new trial on May 21, 1997. Bacey directs our attention to two different cases that have the same names, *Vera v. State*[54] (Amarillo case) and *Vera v. State* (San Antonio case).[55]

The State contends Bacey's motion was denied by operation of law because her motion for new trial was not heard within the seventy-five-day period. The State contends a trial court's denial of a motion for new trial is quite different from a trial

court's failure to hear the motion for new trial within the prescribed time period. Therefore, the State asserts the two cases cited by Bacey are not applicable to the instant case because each dealt with the trial court's denial of an appellant's motion for new trial. Bacey's motion was overruled by operation of law.

In *Vera*[56] (Amarillo case), the trial court set the hearing on the motion for new trial eighty-six days after the sentence was imposed.[57] Contrary to the State's argument, the motion for new trial was not denied but was overruled by operation of law.[58] The appellant argued that the trial court had abused its discretion in not holding a hearing on the motion for new trial within seventy-five days.[59] The court of appeals held that when a party presents to the trial court a timely motion for new trial, supported by affidavit, which raises matters extrinsic to the record, a trial court abuses its discretion by denying a hearing on the motion.[60] *Vera* is distinguishable from the instant case because it dealt with jury misconduct and the appellant's motion was supported by affidavits that properly raised matters extrinsic to the record.[61] Here, Bacey's affidavit does not properly raise a matter extrinsic to the record discussed below.

In *Vera*[62] (San Antonio case), the issue before the court of appeals was whether the trial court had erred in refusing to hold a hearing on the appellant's motion for new trial.[63] *Vera* also dealt with jury

**53.** Tex.R.App. P. 31(e) (Tex. and Tex.Crim.App. 1986, amended 1997) (currently found at Tex. R.App. P. 21.8).

**54.** 836 S.W.2d 344 (Tex.App.-Amarillo 1992, no pet.).

**55.** 868 S.W.2d 433 (Tex.App.-San Antonio 1994, no pet.).

**56.** 836 S.W.2d 344 (Tex.App.-Amarillo 1992, no pet.).

**57.** *Id.* at 347.

**58.** *Id.*

**59.** *Id.* at 346.

**60.** *Id.* at 347 (citing *McIntire v. State*, 698 S.W.2d 652, 656–61 (Tex.Crim.App.1985)).

**61.** *Id.* at 346–47.

**62.** 868 S.W.2d 433 (Tex.App.-San Antonio 1994, no pet.).

**63.** *Id.* at 434.

misconduct.[64] The court of appeals held that because the basis on which appellant asserted his motions rested on facts outside the record, it became mandatory for the trial court to hold an evidentiary hearing.[65] Again, this case is distinguishable from the instant case because the appellant in *Vera* presented affidavits of two jurors which demonstrated reasonable grounds for believing that jury misconduct had occurred.[66]

▆ The right to a hearing on a motion for new trial is not an absolute right.[67] In *Baker v. State*,[68] the appellant argued that the trial court had erred in not hearing appellant's motion for new trial within the required seventy-five days.[69] Without objection from appellant, the trial judge set a hearing on the motion outside the seventy-five-day period.[70] The Court of Criminal Appeals held that by failing to object to the untimely setting, the appellant had failed to preserve his complaint that the trial judge should have held a timely hearing.[71] *Crowell v. State* [72] follows the same reasoning. In *Crowell*, the State argued that Crowell had waived her complaint because she failed to bring the trial court's error in setting a hearing date outside its jurisdiction to the court's attention.[73] The court of appeals held that when a motion for new trial is presented to the trial court, the burden of ensuring that the hearing

thereon is set for a date within the trial court's jurisdiction is properly placed on the party presenting the motion.[74] Crowell failed to object to the date set and thus waived the resulting error.[75]

Because Bacey did not call the trial court's attention to its failure to schedule a hearing within the seventy-five-day period, we hold that she waived her complaint. Further, in *Reyes v. State*,[76] the Court of Criminal Appeals recognized that an unrestricted requirement of a hearing on matters not determinable from the record could lead to fishing expeditions.[77] Therefore, the Court held that it required as a "prerequisite to obtaining a hearing" and "as a matter of pleading" that motions for new trial be supported by affidavit either of the accused or someone else specifically showing the truth of the grounds for · attack.[78] Bacey's motion for new trial is supported by her affidavit, but it does not specifically show the truth of the grounds for attack. There is no evidence the letter is in fact from Germany or in Germany's handwriting. This Court held in *Callahan v. State* [79] that a hearing on a motion for new trial based on newly discovered evidence would only be required if the motion was supported by an affidavit or sworn pleading setting out the truth of the allegations.[80] Bacey did not provide any evidence showing the letter was in fact writ-

---

64. *Id.*

65. *Id.* at 436 (citing *Webb v. State*, 757 S.W.2d 830, 831 (Tex.App.-Texarkana 1988, pet. ref'd)).

66. *Id.* at 435.

67. *Reyes v. State*, 849 S.W.2d 812 (Tex.Crim. App.1993).

68. 956 S.W.2d 19 (Tex.Crim.App.1997).

69. *Id.* at 24.

70. *Id.*

71. *Baker*, 956 S.W.2d at 24–25.

72. 949 S.W.2d 37 (Tex.App.-San Antonio 1997, no pet).

73. *Id.* at 38.

74. *Id.*

75. *Id.*

76. 849 S.W.2d 812 (Tex.Crim.App.1993).

77. *Id.* at 816.

78. *Id.* (citing *McIntire*, 698 S.W.2d at 660, and quoting *Hicks v. State*, 75 Tex.Crim. 461, 171 S.W. 755, 763 (1914)).

79. 937 S.W.2d 553 (Tex.App.-Texarkana 1996, no pet).

80. *Id.* at 560.

ten by Germany or that it was true. The letter itself does not expressly exonerate Bacey from guilt. The letter only states that the writer is sorry for what he or she did and that the truth has to be told. The letter does not state what that truth is. Bacey failed to call the court's attention to its error, and Bacey failed to set forth the truth of her allegations. This point of error is overruled.

■ In her eighth point of error, Bacey contends the trial court erred in holding that it had no jurisdiction to consider her motion for new trial after the expiration of the seventy-five-day period. Bacey contends that to ensure justice the trial court should have relied on its plenary power to hear Bacey's motion. Although the Rules of Criminal Procedure do not specifically provide for plenary powers outside the seventy-five-day window, Bacey argues that the Rules of Criminal Procedure should be construed with the common law and the Rules of Civil Procedure. The common law and the Rules of Civil Procedure allow a civil court to modify, vacate, correct, or reform a judgment thirty days after the last motion is overruled by operation of law or otherwise.[81]

Rules 31(e)(1) and (e)(3) of the Texas Rules of Appellate Procedure provide:

(1) *Time to Rule.* The court shall determine a motion for new trial within 75 days after the date sentence is imposed or suspended in open court.

. . . .

(3) *Failure to Rule.* A motion not timely determined by written order signed by the judge shall be considered overruled by operation of law upon expiration of the period of time prescribed in section (e)(1) of this rule.[82]

■ Because there was no written order signed by the judge within seventy-five days after the date sentence was imposed, the motion was overruled by operation of law. A "new trial" is the rehearing of a criminal action after a finding or verdict of guilt has been set aside upon motion of an accused.[83] Where the time in which to rule upon a motion for new trial has expired and the defendant's motion for new trial has been overruled by operation of law, the trial court lacks authority to subsequently grant a new trial.[84] Any action on the motion by the trial court after this time expired is a nullity.[85] Because the time in which to rule on the defendant's motion had expired, the trial court's subsequent action on the motion must be characterized as granting the new trial *sua sponte.*[86] No authority exists for the court to grant a new trial on its own motion.[87]

In *State ex rel. Cobb v. Godfrey,*[88] the respondent argued that the trial court held or should have held plenary and inherent power for a period of thirty days subsequent to the expiration of the seventy-five-day time period in question and, therefore, the trial court had the power to decide the motion for new trial outside the statutory time limit.[89] The respondent wanted the

**81.** Tex.R. Civ. P. 329b(e).

**82.** Tex.R.App. P. 31(e)(1), (3) (Tex. and Tex. Crim.App.1986, amended 1997) (currently found at Tex.R.App. P. 21.8(a), (c)). There is no substantive difference between the text of the two rules.

**83.** Tex.R.App. P. 30(a) (Tex. and Tex.Crim.App. 1986, amended 1997) (currently found at Tex. R.App. P. 21.1).

**84.** *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47, 49 (Tex.Crim.App.1987); *Ex parte Ybarra,* 629 S.W.2d 943 (Tex.Crim.App.1982); *Zaragosa v. State,* 588 S.W.2d 322 (Tex.Crim.App. [Panel Op.] 1979).

**85.** *Godfrey,* 739 S.W.2d at 49; *Meek v. State,* 628 S.W.2d 543, 547 (Tex.App.-Fort Worth 1982); *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Crim.App. [Panel Op.] 1980).

**86.** *Godfrey,* 739 S.W.2d at 49; *Ex parte Ybarra,* 629 S.W.2d at 945.

**87.** *Godfrey,* 739 S.W.2d at 49.

**88.** 739 S.W.2d 47 (Tex.Crim.App.1987).

**89.** *Id.* at 49.

Court of Criminal Appeals to apply Tex.R. Civ. P. 329b(e) to criminal cases.[90] The Court of Criminal Appeals held that the civil rules were inapplicable to criminal cases in this situation.[91] It stated that the Rules of Civil Procedure apply to "all actions of a civil nature." [92] Further, "[t]he Rules of Appellate Procedure clearly state the time limits for motions for new trial in criminal cases." [93] The Court of Criminal Appeals held that old rule "Tex. R.App. Proc. 31(e)(3) [94] mandates that a motion 'not timely determined by written order signed by the judge shall be considered overruled by operation of law upon expiration of [75 days].' This rule is quite explicit." [95] Following *State ex rel. Cobb v. Godfrey*, we overrule Bacey's eighth point of error.

The judgment is affirmed.

**90.** *Id.*

**91.** *Id.*

**92.** *Id.;* Tex. R. Civ. P. 2.

**93.** *Id.* at 49.

**94.** Tex.R.App. R. 31(e)(3) (Tex. and Tex.Crim. App.1986, amended 1997) (currently found at Tex.R.App. P. 21.8(c)).

