PD-0006-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/21/2015 4:07:20 PM
Accepted 1/28/2015 9:23:56 AM
ABEL ACOSTA
CLERK

No. PD-0006-15

IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXASOF TEXAS

**JAMES DOYLE BURWELL**

**Appellant,**

**V.**

**STATE OF TEXAS**

**Appellee.**

**On Appeal from the Eleventh Court of Appeals of Eastland, Texas
in Cause No. 11-12-00351**

**On Appeal from the 70th District Court of Ector County, Texas
in Cause No. A-39,270**

**PETITION FOR DISCRETIONARY REVIEW**

FILED IN
COURT OF CRIMINAL APPEALS

January 28, 2015

ABEL ACOSTA, CLERK

**DAVID G. ROGERS**
**Fivecoat & Rogers, PLLC**
State Bar Number 00788310
214 W. Texas Ave. Ste. 811
Midland, Texas 79701
Telephone: (432) 620-8774
david@fivecoatlaw.com
**Attorneys for Petitioner**

**ORAL ARGUMENT NOT REQUESTED**

No. PD-0006-15

---

IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXASOF TEXAS

---

## JAMES DOYLE BURWELL

Appellant,

**V.**

## STATE OF TEXAS

Appellee.

---

**On Appeal from the Eleventh Court of Appeals of Eastland, Texas
in Cause No. 11-12-00351**

**On Appeal from the 70th District Court of Ector County, Texas
in Cause No. A-39,270**

---

## PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE JUSTICES OF COURT OF CRIMINAL APPEALS:

Petitioner James Doyle Burwell respectfully files this Petition.

## Identity of Parties and Counsel

The following is a complete list of all parties, as well as the names and addresses of all counsel:

| | |
|---|---|
| Appellant: | James Doyle Burwell |
| Appellant's Counsel at Trial: | Edward Ray Keith, Jr.<br>Dennis R. Reeves<br>West Texas Regional Public Defender<br>for Capital Cases<br>P.O. Box 2097<br>Lubbock, Texas 79408 |
| Appellant's Counsel on Appeal: | M. Michele Greene<br>2833 Wildwood<br>Odessa, Texas 79761 |
| Complainant: | The State of Texas |
| State's Counsel at Trial: | Bobby Bland, District Attorney<br>Linda Deaderick, Assistant District Attorney<br>300 N. Grant Ave., Rm. 305<br>Odessa, Texas 79761 |
| State's Counsel on Appeal: | Michael Bloch<br>Assistant District Attorney<br>300 N. Grant Ave. Rm. 305<br>Odessa, Texas 79761 |

Trial Court:                     The Honorable Denn Whalen
                                 70th Judicial District
                                 Ector County, Texas
                                 300 N. Grant Ave., Rm. 331
                                 Odessa, Texas 79761

Appellant's PDR Counsel:         David G. Rogers
                                 Fivecoat & Rogers, PLLC
                                 214 W. Texas Ave., Suite 811
                                 Midland, Texas 79702
                                 Phone:      432-620-8774
                                 Fax:        432-620-9945
                                 Email: david@fivecoatlaw.com

**Request for Oral Argument**

Pursuant to TEX. R. APP. P. 39, Burwell hereby waives oral argument.

# Table of Contents

Identity of the Parties and Counsel ........................................................ ii

Record References ......................................................................... iii

Party References .......................................................................... iv

Request for Oral Argument ................................................................ iv

Index of Authorities .................................................................... viii

Statement of the Case .................................................................... xii

Issues Presented ........................................................................ xiv

Statement of Facts ......................................................................... 1

Summary of the Argument .................................................................... 4

Argument and Authorities ................................................................... 6

**Question Presented:** The state introduced into evidence multiple gruesome and cumulative photographs. The Eleventh Court of Appeals erred in concluding that

the trial court did not abuse its discretion by allowing the admission of the photographs.

**Conclusion**..................................................................................................17

**Prayer**..........................................................................................................17

**Certificate of Compliance**.......................................................................18

**Certificate of Service**...............................................................................18

**Appendix** ................................................................................................ 48

## Index of Authorities

*Burwell v. State* 11-12-00352-CR (Nov. 2014)..................................16

*Davis v. State, 313* S.W.3d 317 (Tex. Crim. App. 2010), *cert.denied,*
132, S. Ct. 122, 181 L.Ed.2d 45(2011)...........................................12

*O'Neal v McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 974
(1995)...................................................................................................17

*Shuffield v. State,* 189 S.W.3d 782 (Tex.Crim.App. 2006), *cert. denied,*
549 U.S. 1056, 127 S.Ct. 664, 166 L.E.d 521 (2006).......................12

## Rules

TEX. R. APP. P. 39................................................................................ iv

TEX. R. APP. 44.2(b) ........................................................................... 14

TEX.R. EVID. 403............................................................................. 14,15

## Statement of the Case

Nature of the Case: On or about August 15, 2011, Burwell was indicted on three counts of capital murder—capital felonies—and two counts of murder—first degree felonies.

Course of Proceedings: On June 27, 2012, the State filed its Notice of Intention to Seek the Death Penatly. (CR 1:44). On August 21, 2012, the State filed its Waiver of Death Penalty. (CR 2:344). On November 5, 2012, Burwell filed his Application for Probated Sentence. (CR 2:445). On that same day, Burwell filed his Election for Jury to Assess Punishment. (CR 2:446-47). A jury trial was held from November 5, 2012 through November 8, 2012. (RR 1:1, 10:1). At the beginning of the jury trial, Burwell entered "Not Guilty" pleas as to all three counts of capital murder. (RR 7:11-13).

At the conclusion of the jury trial, the jury found Burwell "Guilty" as to each indicted count of capital murder. (RR 10:222). The trial court sentenced Burwell to life in prison without parole in the Institutional Division of the Texas Department of Criminal Justice for each capital felony, with the life sentences to run concurrently. (CR 2:491-96; RR 10:223-24) (Appendices 1-3). The trial

court also assessed Burwell $1,752.00 in court costs. (CR 2:491-96) (Appendices 1-3). On December 5, 2012, Burwell timely filed his Notice of Appeal. (CR 2:481-82). Burwell raised several point of error. The court granted appellants point of error on double jeopardy and affirmed the appellants conviction that he killed the Glovers in the same criminal transaction. The court found the evidence sufficient. The court overruled his contentions on the admission of expert testimony. The court overruled his points of error on the admission of gruesome photographs. On November 20, 2014, the Eleventh Court of Appeals Affirmed the Capital Murder Conviction. (Appendix A).

## GROUNDS FOR REVIEW

**Question Presented:** The State introduced into evidence multiple gruesome and cumulative photographs. The Eleventh Court of Appeals erred in concluding that the trial court did not abuse its discretion by allowing the admission of the photographs.

## SUMMARY OF THE ARGUMENT

The Eleventh Court of Appeals erred in finding the trial court did not err in the admission of gruesome photographs. Such evidence simply confused, mislead, and distracted the jury, and it was an abuse of discretion in failing to sustain Burwell's objections to same. The error violated Burwell's substantive rights and inflamed the jury in to returning the three capital murder conviction in the case at bar.

## ARGUMENT AND AUTHORITIES

**Issue No. 1:** The State introduced into evidence multiple gruesome and cumulative photographs. The Eleventh Court of Appeals erred in concluding that the trial court did not abuse its discretion by allowing the admission of the photographs.

The Court should review this case for public policy reasons. Technology is ever advancing and photographs are becoming easier to obtain, move vivid and detailed. Photographs are becoming more graphic. This allows the state to introduce advanced digital photographs that inflame the passions of the jury and have the potential to cause a wrongful verdict. Further with the advancement of technology and the details in photographs multiple photographs are no longer necessary.

In regards to photographs, a trial court may consider many factors in determining whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. *Shuffield v. State,* 189 S.W.3d 782, 788 (Tex.Crim.App. 2006), *cert.denied,* 549 U.S. 1056, 127 S.Ct. 664, 166 L.E.d2d 521 (2006); *Davis v. State,* 313 S.W.3d 317,331 (Tex.Crim.App. 2010), *cert. denied,* 132, S.Ct. 122, 181 L.Ed.2d 45(2011), Such factors include the number of photographs, the size of the photographs, the details shown in the photographs, and whether the photographs, the details shown in the photographs, and whether the photographs are in color or in black-and-white. *Shuffield,* 189 S.W.3d at 787; *Davis,* 313 S.W.3d at 331. Additional factors to be considered in the trial court's assessment include whether the photographs are gruesome in nature, whether the body is naked or clothed, whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photographs to the defendants detriment. *Id.* A trial court may also consider the availability of other means of proof and other circumstances unique to the individual case. *Davis,* 313 S.W.3d at 331.

The State's Gruesome Photographs

The photographs included in the record are small, black-and-white images. (RR 11). However, this Court should assume that the photographs were shown to

the jury in color. *See Shuffield*, 189. S.W.3d at 787 (photos in record were three-and-one-half inches by five inches and black-and-white; Texas Court of Criminal Appeals assumed photos were shown to jury in color). Additionally, all of the photographs were enlarged and published to jury via a big screen. (RR 8:15, 17, 62; 10:123). The photographs are also very detailed and particularly gruesome in nature.

For example, sixteen of the photographs from the crime scene are on the dead bodies of the Glovers taken from various angles. (RR 11:SX #27, #29, #30, #40, #43, #46, #47, #50, #53, #60, #62, #63, #65, #70, #72, and #75). These sixteen pictures depict the Glover's gruesome injuries, the Glover's copious blood loss, and the violent nature of the Glovers' murders. (*Id.*) Five of the crime scene photographs depict Mr. Glover's body with a knife protruding from his back.(RR 11:SX#30, #40, #43, #46 and #47). Fourteen of the autopsy photographs are cumulative close-up pictures of the knife wounds inflicted upon the Glovers. (RR 11:SX#321, #322, #323, #343, #375, #376, #377, #378, #379, #380, #381, #382, #383, and #384).

In five of the photographs from the crime scene and one autopsy photograph, Mrs. Glover is partially naked with her panties pulled down. (RR 11:SX#27, #29, #60, #62, #75, and #311).

Undisputedly, there was no evidence introduced at trial that Mrs. Glover was sexually assaulted in any manner. In deed, the medical examiner who performed Mrs. Glover's autopsy testified there was "not a bit" of evidence to suggest Mrs. Glover had been sexually assaulted. (RR 10:109). However, the medical examiner was one of the last witnesses to testify on the last day of trial. (RR 10:1,97). Thus, the decision to allow the State to introduce multiple pictures of Mrs. Glover laying on the floor, partially naked, with her panties pulled down to her knees left the jury with impression during the first three days of trial that Mrs. Glover had been sexually assaulted. The trial court's erroneous decision to admit the photographs over Burwell's **Rule 403** objections confused, distracted, and mislead the jury as to which offense Burwell was actually being tried.

Furthermore, the State unduly emphasized the photographs during the four-day jury trial. For example, the State would intentionally leave the enlarged, colored photographs up on the big screen in front of the jury for lengthy periods of time. So much so that at one point, the trial court actually had to direct the State to take down State's Exhibits #29 and #30-photos depicting the dead bodies of the Glover's from the big screen. (RR 8:21). Additionally, the State emphasized the gruesome nature of the photographs twice during closing arguments. (RR 10:200).

14

In this case, Burwell never contested the extent of the Glovers' injuries nor did he contest the manner by which they were killed. Rather, Burwell simply disputed that he was the individual who committed these violent murders. (RR 7:11-13). Thus the introduction into evidence of multiple photographs of the Glovers' dead bodies at the crime scene, along with the close-up photos from the Glovers' autopsies, did not serve to assist the jury in deciding any contested fact in the case. Instead, the photographs were duplicative, cumulative, and inflammatory. As such, they were used by the State to make an irrational impression on the jury. The trial court therefore abused its discretion in failing to sustain Burwell's **Rule 403** objections to the photographs.

F.    Burwell's Harm.

The decision to admit the photographs substantially influenced the jury in determining their verdicts in the case at bar. The State's repeated use and emphasis of the photographs throughout the trial clearly served as a constant reminder to the jury of the gruesome and violent nature of the Glovers' deaths and also played on jury's members fears and passions. As such, it was difficult, if not impossible, for the jury to review the evidence in a logical and rational manner when determining Burwell's guilty under the facts of this case.

**Burwell v. State 11-12-00352-CR (Nov. 2014)**

The Eleventh Circuit affirmed the capital murder conviction and overruled the points of error regarding gruesome photographs, (*Burwell v. State* 11-12-00352-CR (Nov. 2014). The court opined that a jury can gain information from viewing pictures from different perspectives id at 6.

Further the appellate court held that photographs are admissible if they are genuinely helpful to the jury in making the decision and inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects *id* at page 8. The court utilized a six factor test to determine admissibility *id* at 8. The court found that the photographs and related testimony adequately explained the state's theory and increased the jury's comprehension *id* at 10. Therefore, there was no error in the trial court's ruling. *Id*

Again, this is why it is necessary for this court to again revisit the issue of multiple gruesome photographs. It is simple to argue each picture showing the jury something different, With the clarity of digital pictures less is more and judge's and practitioner's need additional science.

This Court should have grave doubts that the trial court's error did not affect the outcome of this case. As a result of these grave doubts, the Court should

reverse the jury's verdicts and remand this case for a new trial. If this Court's is unsure whether the trial court's error affected the jury's guilty verdicts, the Court should treat the error as harmful and as a violation of Burwell's substantial rights. *See O'Neal v. MCAninch,* 513 U.S 432, 435115 S.Ct. 992, 130 L.ED.2d 947 (1995). Thus, the Court should reverse Burwell's convictions for capital murder and remand the case for a new trial.

## CONCLUSION

The trial court also allowed the State to introduce a multitude of cumulative and highly gruesome photographs. Such evidence did not aid the jury in determining any contested fact in this cause. Rather, these pictures simply served to make a prejudicial and lasting impression on the jury, thereby inflaming jury members fears and passions at the deaths of the Glovers. Burwell's substantive rights were violated, and the trial court's erroneous evidentiary rulings clearly impacted the jury's verdict's in this cause.

## PRAYER

Petitioner prays the Court grant this Petition for Discretionary Review and order a new trial.

Finally, Burwell requests the Court grant him any such other relief to which he may be justly entitled.

Respectfully submitted,

**DAVID G. ROGERS**
**Fivecoat & Rogers, PLLC**
214 W. Texas Ave., Suite 811
Midland, Texas 79701
Phone:      432-620-8774
Fax:        432-620-9445
Email: david@fivecoatlaw.com

By:    /s/ David G. Rogers
David G. Rogers
State Bar No.00788310

**ATTORNEY FOR APPELLANT**
**JAMES DOYLE BURWELL**

## Certificate of Compliance

In accordance with Rules 9.4(e) and (i) of the TEXAS RULES OF APPELLATE PROCEDURE, the undersigned attorney of record certifies that the Brief of Appellant contains **14-point** typeface for the body of the brief, **12-point** typeface for footnotes in the brief, and contains **2,513** words, excluding those words identified as not being counted in Rule 9.4(i)(1) and was prepared on Word Perfect Version 9.

/s/ David G. Rogers
David G. Rogers

## Certificate of Service

I hereby certify that on this 21st day of January, 2015 a true and correct copy of the above and foregoing Brief of Appellant was served electronically to the following:

Michael Bloch
Ector County District Attorney's Office
Ector County Courthouse
300 N. Grant Ave. Rm. 305
Odessa, Texas 79761
blochmj@co.ector.tx.us

**Appellee**

/s/ David G. Rogers
David G. Rogers

# APPENDIX

2014 WL 6603422

Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH. SEE TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas, Eastland.

James Doyle **Burwell**, Appellant

v.

The State of Texas, Appellee

No. 11-12-00351-CR |
Opinion filed November 20, 2014

On Appeal from the 70th District Court, Ector County, Texas,
Trial Court Cause No. A-39,270

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## MEMORANDUM OPINION

### JIM R. WRIGHT, CHIEF JUSTICE

*1 The jury found James Doyle **Burwell** guilty of three counts of capital murder as charged in the indictment. The State did not seek the death penalty, and the trial court sentenced Appellant to confinement for life without parole for each count. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp.2014); TEX.CODE CRIM. PROC. ANN. art. 37.071, § 1 (West Supp.2014). Because three capital murder convictions based on the same unlawful entry in this case violate the Double Jeopardy Clause,[1] as the State agrees, we vacate two of those convictions and uphold the remaining conviction.

After working to remodel the home of Richard "Dick" Jess Glover and Peggy Colleene Glover the previous Saturday, construction workers arrived on Monday morning and found the Glovers murdered in their home. Richard had been stabbed eight times, and Peggy's throat had been cut. Richard's SUV, a Lincoln Navigator, was also missing. Richard's children had previously installed a GPS monitor on the missing SUV, and they determined that it was located at an address in Lubbock, Texas. Lubbock police officers went to the address, located the SUV in front of a motel, and began surveillance. Within half an hour, officers saw Appellant approach the vehicle, use a keyless remote to unlock the doors, and place a backpack in the front passenger seat. The officers immediately arrested him.

Officers searched the SUV, Appellant's person, and his pickup, which had been found just two blocks from the Glovers' home. Officers found several of Peggy Glover's credit cards in Appellant's wallet, and they found several items inside the stolen SUV that had been purchased with those cards, including a laptop, laptop accessories, cell phones, and the backpack. In the stolen SUV, there were several receipts for the purchases. Officers used the information from the receipts to obtain surveillance footage of Appellant using Peggy Glover's credit cards to make several purchases.

While the Lubbock officers were arresting Appellant, crime scene investigators in Odessa collected DNA evidence, lifted fingerprints, and made castings of shoe impressions at the Glovers' home. Although Appellant's DNA was not found anywhere inside or around the home, Richard's blood was found on Appellant's boots, and Appellant's fingerprints were found on the driver's side doorjamb of a Mercedes Benz that was located in the garage. Bradley Mullins, a trace analyst from the Texas Department of Public Safety Crime Laboratory, compared impressions of shoe prints from the scene with Appellant's boots and concluded that several of the shoe impressions "could have been made" by Appellant's boots because they were the same size and had the same tread design. The impressions did not match the shoes of the construction workers or the officers who were present at the scene. Mullins also was able to exclude the victims as a match.

Appellant maintained at trial that, while the State's evidence showed that he used Peggy Glover's credit cards and drove Richard Glover's vehicle, it did not prove beyond a reasonable doubt that he killed the Glovers. After four days of testimony, the jury found Appellant guilty of all three counts of capital murder.

*2 In his first issue on appeal, Appellant complains that the three convictions for capital murder violated the Fifth Amendment's Double Jeopardy Clause. In the indictment, it was alleged in count one that Appellant committed capital murder by intentionally and knowingly killing Richard Glover and Peggy Glover during the same criminal transaction. It was alleged in count two that Appellant intentionally killed Peggy Glover in the course

of committing robbery and burglary and in count three that Appellant intentionally killed Richard Glover in the course of committing robbery and burglary. The State agrees that double jeopardy bars simultaneous convictions for more than one of the three capital murder convictions.

When multiple convictions violate the Double Jeopardy Clause, we retain the conviction for the "most serious" offense and set aside the others. *Ex parte Cavazos,* 203 S.W.3d 333, 337 (Tex.Crim.App.2006). When, as here, the degree of the offense and the term of years assessed by the factfinder are the same, we have been instructed to consider the fine assessed and restitution ordered. *See id.* at 338–39. However, all three of Appellant's convictions carry the same punishment, and the trial court did not order Appellant to pay a fine or restitution.

Although the Court of Criminal Appeals has not addressed this issue directly, it has indicated that, all punishment factors being equal, the conviction that should be retained is generally the offense named on the first jury verdict form, and the court noted that this is generally the offense charged in count one of the indictment. *Id.* at 339 n.8. Both parties in this case agree that we should retain the conviction under count one and vacate the convictions under counts two and three, so we need not determine which conviction is the "most serious." Accordingly, we vacate Appellant's convictions under count two and count three and retain the conviction under count one. Appellant's first issue is sustained.

We next address Appellant's challenge to the sufficiency of the evidence. We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App.2010); *Polk v. State,* 337 S.W.3d 286, 288–89 (Tex.App.—Eastland 2010, pet. ref d). The reviewing court considers all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. We defer to the jury's credibility determinations and the weight to be given to the testimony because it is the jury's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Jackson,* 443 U.S. at 319; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007). We presume that the jury resolved conflicting evidence in favor of the verdict, and we defer to that determination. *Jackson,* 443 U.S. at 326.

Appellant specifically challenges the lack of scientific evidence and eyewitness testimony. Appellant argues that the evidence is insufficient because his fingerprints and DNA were found neither on the murder weapon nor inside the Glovers' home, because no one could place Appellant near the Glovers' home at the time of the murders, and because the experts could only conclude that Appellant "could have" made the shoe prints in and around the home. The State argues that Appellant improperly focuses on a lack of certain types of evidence rather than considering the evidence that was offered and admitted at trial and that "the necessary inferences made by the jury" were supported by the evidence when viewed in the light most favorable to the verdict. We agree.

*3 The State must prove beyond a reasonable doubt that the offense was committed and that the accused is the person who committed the crime. *See Miller v. State,* 667 S.W.2d 773, 776 (Tex.Crim.App.1984). The State may prove identity through direct or circumstantial evidence. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986). Identity may be established through inferences. *Roberson v. State,* 16 S.W.3d 156, 157 (Tex.App.—Austin 2000, pet. ref d). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007).

Within hours of the discovery of the Glovers' bodies, Appellant was found in possession of the Glovers' vehicle and other personal items, and Appellant's vehicle was discovered a couple of blocks from the Glovers' home. Richard's stolen SUV was parked outside a motel room Appellant had rented. Appellant used the keyless remote to unlock the SUV, and his palm print was found inside. Peggy's credit cards and Appellant's social security card were inside his wallet, and Appellant had used several of her credit cards to charge more than fifteen hundred dollars' worth of snacks, cell phones, a laptop, and other items. At the Glovers' home, Appellant's fingerprints were found on the doorjamb of a vehicle in their garage. Of the nine shoe prints at the scene, each was tied to either Appellant or Richard Glover and did not match the shoes of any of the construction workers or police officers who were at the scene. Regardless of whose shoe prints were at the scene, Richard's blood was found on Appellant's boots.

Viewing the evidence in the light most favorable to the verdict, we must conclude that any rational trier of fact could have found beyond a reasonable doubt that Appellant murdered Richard and Peggy Glover in the same criminal

transaction. *See Jackson*, 443 U.S. at 319. Appellant's seventh issue is overruled.

In his second and third issues, Appellant argues that the trial court erred when it denied his request for jury instructions on the lesser included offenses of aggravated robbery and burglary of a habitation. During the charge conference, Appellant requested these instructions as lesser included offenses of capital murder as charged in counts two and three. Appellant did not contend at trial, nor does he argue on appeal, that aggravated robbery and burglary of a habitation are lesser included offenses of capital murder as charged in count one of the indictment. Although both parties agreed in Issue One that we should vacate Appellant's convictions under the second and third counts and retain his conviction under count one, neither party addressed whether we must now consider whether it was reversible error to refuse instructions on lesser included offenses of counts two and three. That is an issue we need not decide in this case because, even if we were to find that the refusal was error, we must conclude that any error from refusing the instructions was harmless in this case.

Properly preserved charge error requires reversal if the accused suffered some harm from the error. TEX.CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). To assess harm, we consider the entire jury charge, the state of the evidence, the contested issues, the weight of the probative evidence, the arguments of counsel, and any other relevant information contained in the record. *Almanza*, 686 S.W.2d at 171.

*4 Appellant cites *Saunders v. State*, 913 S.W.2d 564, 571 (Tex.Crim.App.1995), for the proposition that "Texas courts routinely find 'some' harm and reverse" when the trial court erroneously refuses to submit a requested lesser included offense if that refusal "leaves [the] jury with sole option either to convict defendant of [the] greater offense or to acquit him" and argues that he was harmed because the trial court "left the jury with the sole option either to convict him of murder or to acquit him." Although the trial court in this case refused to instruct the jury on burglary of a habitation, it did submit the lesser included offense of murder; therefore, the jury was not left with the sole option to convict of the greater offense or to acquit. The Court of Criminal Appeals explained that the danger in leaving the jury a single option lies in "the possibility that a jury, believing the defendant to have committed some crime, but given only the option to convict him of a greater offense, may have chosen to find him guilty

of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt he really committed the greater offense." *Saunders*, 913 S.W.2d at 571 (citing *Beck v. Alabama*, 447 U.S. 625 (1980)).

If that were the case here, the jury was not required to find Appellant guilty of all three counts and could have decided to convict Appellant of either or both counts of murder in the course of robbery or burglary and to acquit him of committing two intentional murders during the same criminal transaction. But it did not.

We can tell from the jury's verdicts that it rejected Appellant's theory that he committed burglary but did not kill the Glovers because it found him guilty on all three counts. In the charge, the jury was instructed to find Appellant guilty of capital murder as charged in count one of the indictment if it found beyond a reasonable doubt that Appellant "intentionally or knowingly cause[d] the death of [Richard Glover] by cutting or stabbing [him] with a knife," that he "intentionally or knowingly cause[d] the death of [Peggy Glover] by cutting or stabbing [her] with a knife," and that "both murders were committed during the same criminal transaction." The jury found Appellant guilty of capital murder "as charged in Count One of the Indictment." By its verdict, the jury found that Appellant killed Richard Glover by cutting or stabbing him with a knife and that he killed Peggy Glover by cutting or stabbing her with a knife. In addition, the jury also found that Appellant killed Peggy Glover in the course of committing robbery or burglary and that he killed Richard Glover in the course of committing robbery or burglary.

We have already detailed the evidence from trial and identified the disputed facts, and it is clear from closing arguments that the jury knew that the dispute centered on whether Appellant was the person who committed the murders. Because the jury found Appellant guilty of all three counts of capital murder, we conclude that he suffered no harm from the trial court's erroneous refusal to submit an instruction on aggravated robbery or an instruction on burglary of a habitation. Appellant's second and third issues are overruled.

In his fourth and fifth issues, Appellant challenges the qualifications of two crime scene investigators. Appellant complains that the State failed to establish that Pat Harris was qualified to testify about the comparison of fingerprints or shoe impressions and that the State also failed to establish that

Stacy Cannady was qualified as an expert in DNA swabbing or fingerprint comparison.

We review a trial court's determination that a witness is qualified as an expert and its ruling on the admission of expert testimony for an abuse of discretion. *Ellison v. State,* 201 S.W.3d 714, 723 (Tex.Crim.App.2006). "Absent a clear abuse of that discretion," we will not disturb the trial court's decision to admit or exclude testimony. *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex.Crim.App.2000). We review the trial court's ruling in light of the evidence before the court at the time of the ruling. *Rodgers v. State,* 205 S.W.3d 525, 528–29 (Tex.Crim.App.2006).

*5 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX.R. EVID. 702. "The special knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things." *Penry v. State,* 903 S.W.2d 715, 762 (Tex.Crim.App.1995). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers,* 205 S.W.3d at 527–28. To evaluate whether a trial court abused its discretion when it determined that a witness was qualified as an expert, we consider three criteria: (1) Is the field of expertise complex? (2) How conclusive is the expert's opinion? (3) How central is the area of expertise to the resolution of the lawsuit? *Id.*

We first address Appellant's contention that the State failed to establish that Harris was qualified as an expert in comparing shoe impressions. Appellant contends that a "one-week course" on impression comparisons and "ten to fifteen on-the-job comparisons" were insufficient to qualify Harris as an expert in this area.

Testimony about the comparison of shoe impressions has long been admissible in Texas "by *either* lay or expert witnesses." *Id.* at 532. In *Rodgers,* the parties conceded that the witness was an expert in fingerprint comparison but disputed whether the witness was an expert in shoe- or tire-impression comparison. *Id.* at 529. The witness had attended courses on shoe and tire impressions at the Dallas County Sheriff's Office, the University of North Texas, and an FBI conference. *Id.* The defendant's voir dire revealed, however, that the witness never graduated from college, never published articles on the issue, and "had only a few days of class work specific to the matching of shoe and tire imprints." *Id.* Regardless, the Court of Criminal Appeals explained that lay and expert testimony about the comparison of shoe prints is admissible because the field "is not particularly complex, the witness's opinions are not conclusive, and consequently, they are generally not pivotal to the resolution of the case." *Id.* at 533 (footnotes omitted).

Here, the State established that Harris had been a crime scene technician for the Odessa Police Department for ten years. Harris had attended two FBI shoe and tire impression courses in Quantico, Virginia. In the initial week-long class, Harris learned about making tire impressions and comparisons, and a year later, Harris attended another one-week class related to shoe impressions and comparisons. As part of his course work, Harris had compared twenty to twenty-five shoe impressions, and he had compared another fifteen as part of his work duties.

We cannot conclude that it was error to admit Harris's testimony related to shoe-impression comparison because this is not a complex field of expertise. Moreover, Harris did not testify that Appellant's boots conclusively matched the impressions at the scene but, rather, that Appellant's boots could have made the impressions and that the impressions could not be matched to the shoes of the construction workers, officers, or family who were at the scene. *See id.* at 527–28.

Even if it was error to admit Harris's testimony, any error would be harmless for two reasons. First, Mullins, a trace analyst from the crime lab whose qualifications were not challenged, connected each of the nine shoe impressions from the scene to either Appellant's boots or Richard Glover's shoes. Mullins concluded that several impressions "could have been made" by Appellant because the impressions had the same size and tread design as Appellant's boots. Mullins concluded that several other impressions were "probably made" by Richard Glover because they had the same size, tread design, and degree of wear as his shoes. Because Richard Glover's shoes had wear patterns, Mullins was able to eliminate him as a match to the remaining shoe impressions. Second, determining who made the impressions was not central to the resolution of the case because Richard's blood was found on Appellant's boots and because Appellant did

not challenge that he was present at the scene. We cannot conclude that the trial court abused its discretion. *See id.*

**\*6** In connection with Appellant's challenge of Cannady's qualifications to swab objects for the presence of DNA, he attacks her lack of formal training, her failure to detail her on-the-job training, and her failure to identify who had trained her. Cannady was asked to swab the doorknob and dead bolt of a door in the master bedroom that led to the backyard. To swab dry objects for DNA, Cannady explained that she puts a couple of drops of distilled water on a swab that has an exposed tip, swabs the area potentially containing DNA, and places the swab in an envelope for testing at the lab.

We cannot conclude that the trial court abused its discretion when it overruled Appellant's objections to Cannady's qualifications to collect DNA. While DNA analysis is a complex field, the collection of DNA evidence is not a particularly complex process, and Cannady did not purport to perform any particularly specialized analysis of the DNA or give any opinion related to the results of the DNA tests. *See id.* at 528 ("The degree of education, training, or experience ... is directly related to the complexity of the field about which he proposes to testify."). Even if the evidence does not establish that Cannady was qualified, any purported error would be harmless because the forensic scientist who examined the swabs of the doorknob did not testify about the results of any testing of those swabs. *See* TEX.R.APP. P. 44.2(b).

We next address Appellant's complaint that the State failed to establish that Harris and Cannady were qualified as experts in fingerprint comparison. However, we need not determine whether the record shows that Cannady and Harris were qualified because any resulting error would be harmless in light of other testimony.

Another crime scene investigator, Anita Todd, verified Cannady's results and Harris's results and testified as to those results at trial, and Appellant did not challenge Todd's qualifications. The record shows that Todd had been a crime scene investigator in Odessa for nine years. Todd testified that she had taken basic, intermediate, and advanced fingerprint comparison classes; latent print processing classes; and a palm print comparison class. Since 2006, Todd had been a member of the International Association for Identification and had taught courses about latent print processing. Todd testified that she did a "fingerprint comparison verification" for the fingerprints that Cannady had already compared and for the palm prints that Harris had already compared, and

she explained that this was a normal procedure. Todd's comparison of the palm prints and fingerprints yielded the same result as the Harris and Cannady comparisons. Therefore, any error in allowing Cannady and Harris to testify about the results of their fingerprint comparison would have been harmless in light of Todd's testimony as to the same result. *See Lane v. State,* 151 S.W.3d 188, 193 (Tex.Crim.App.2004). Appellant's fourth and fifth issues are overruled.

In his sixth issue, Appellant challenges the trial court's decision to admit photographs over his objections that the photographs were cumulative, inflammatory, or gruesome. Appellant challenges the admissibility of nineteen crime scene photographs (State's Exhibit Nos. 27, 29, 30, 40, 43, 46, 47, 50, 53, 54, 60, 62, 63, 65, 69, 70, 72, 75, and 102) and seventeen autopsy photographs (State's Exhibit Nos. 310, 311, 317, 321, 322, 323, 343, 375, 376, 377, 378, 379, 380, 381, 382, 383, and 384). "A judge's ruling on a Rule 403 objection will be reversed only for a 'clear abuse of discretion.' " *Matamoros v. State,* 901 S.W.2d 470, 476 (Tex.Crim.App.1995) (quoting *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App.1991)). "So long as the trial court's ruling is within the zone of reasonable disagreement, it will be upheld." *Id.*

**\*7** Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." TEX.R. EVID. 403. To rule on a Rule 403 objection, the trial court must balance the probative value of the offered evidence with the danger of unfair prejudice. *Id.; Montgomery,* 810 S.W.2d at 388. Similarly, our review on appeal is limited to assessing whether the probative value of the photographs is greatly outweighed by their prejudicial effect. *Long v. State,* 823 S.W.2d 259, 271 (Tex.Crim.App.1991).

We first note that we need not address all of Appellant's contentions. Because the trial court sustained Appellant's objection to Exhibit No. 54, there is no adverse ruling related to Exhibit No. 54 for us to review. *See* TEX.R.APP. P. 33.1(a)(1); *Mathis v. State,* 67 S.W.3d 918, 927 (Tex.Crim.App.2002). When the State offered Exhibit Nos. 72, 311, and 378 at trial, Appellant did not object and, thus, did not preserve his complaint regarding the admissibility of these exhibits for our review. *See* TEX.R.APP. P. 33.1(a)(1); *Clark v. State,* 365 S.W.3d 333, 339 (Tex.Crim.App.2012).

Although Appellant notes in his brief that he objected when the State offered Exhibit Nos. 69, 102, 310, and 317, he does not present us with an argument in which he attacks the admissibility of the exhibits. Further, Appellant presents us with no argument as to why the trial court erred when it overruled the objections to those exhibits. Thus, Appellant has waived his complaints on appeal as to those exhibits. *See* Tex.R.App. P. 38.1(i); *Smith v. State,* 907 S.W.2d 522, 532 (Tex.Crim.App.1995).

Appellant also complains that Exhibit Nos. 27, 29, 60, 62, and 75, showing one of the victims partially naked, were inadmissible because of the danger that they would confuse, distract, and mislead "the jury as to which offense [Appellant] was actually being tried." However, Appellant did not make this complaint at trial and, thus, has not preserved admissibility on this ground for our review. *See* TEX. R APP. P. 33.1(a); *Goff v. State,* 931 S.W.2d 537, 551 (Tex.Crim.App.1996) (explaining grounds raised on appeal must comport with the objection made in the trial court).

We now address Appellant's complaint about the cumulative nature of fifteen crime scene photographs that show "the dead bodies of the Glovers taken from various angles." Of these, seven are photographs of Peggy's body; seven are photographs of Richard's body; and one, State's Exhibit No. 40, shows both bodies. As this is the only complained-of exhibit that shows the location of both bodies in relation to each other, we cannot conclude that the cumulative nature of Exhibit No. 40 outweighed its probative value. We will next consider the admissibility of State's Exhibit Nos. 27, 29, 60, 62, 63, 70, and 75, which are photographs of Peggy's body at the crime scene. We will then consider State's Exhibit Nos. 30, 43, 46, 47, 50, 53, and 65, which are photographs of Richard's body at the crime scene.

Photographs are generally admissible when oral testimony about matters depicted in the photographs is also admissible. *Hicks v. State,* 860 S.W.2d 419, 426 (Tex.Crim.App.1993). "When there are two or more pictures that depict the same thing but from different perspectives, the jury can gain information it might not otherwise have when viewing other pictures from other perspectives." *Bacey v. State,* 990 S.W.2d 319, 326 (Tex.App.—Texarkana 1999, pet. ref'd). "Close-up photographs and photographs taken from different vantage points add to the jury's understanding of the condition of the crime scene." *Matamoros,* 901 S.W.2d at 476.

*8 State's Exhibit Nos. 27 and 60 both show Peggy's body and blood smeared across the tile floor from where she was dragged. Only Exhibit No. 27 shows signs of a struggle where the smear begins, and the viewpoint provides more context to the layout of the rooms than Exhibit No. 60. Exhibit No. 60, however, shows a window that is not quite clear from Exhibit No. 27. The window is the only window in the room that was not covered by plywood from the ongoing remodeling work, and the lead homicide investigator testified that he believed that Peggy's body was dragged from where she died to where she was found so that her body could not be seen from that window.

State's Exhibit No. 29 is a close-up of Peggy lying on her back as she was discovered, and it is the only complained-of exhibit that shows a close-up of the large cut across Peggy's neck that was determined to be fatal. Exhibit Nos. 62 and 63 are of Peggy's upper body and were taken further away and from different viewpoints. Exhibit No. 63 was taken from the direction of her head toward her feet, and Exhibit No. 62 was taken from the direction of her feet looking toward her head. Exhibit No. 70 was taken from a similar viewpoint as Exhibit No. 63, but Exhibit No. 70 only shows Peggy's legs. Peggy's panties are partially down on her thighs in several of the photographs. Although Exhibit Nos. 27, 29, 60, 62, 63, and 70 all show Peggy's body at the crime scene, they are sufficiently different in both magnification and angle that we cannot conclude that it was error to admit them over Appellant's objection to their cumulative nature.

Exhibit No. 75 shows Peggy after she had been rolled over, and her buttocks are exposed. There is a large mark covering a large portion of one of her thighs, and the photograph also shows the pool of blood in which she had been lying. The trial court overruled Appellant's objection that this was cumulative and reasoned that "[i]t shows something located on the left back thigh, which has not been represented to the record or represented by any other exhibits that have been offered." We agree and hold that the trial court did not abuse its discretion when it admitted this exhibit.

Exhibit Nos. 30 and 43 are photographs of Richard's body lying facedown; they were taken from the left side of his body. Exhibit No. 30 is a close-up that shows his face and hands, whereas Exhibit No. 43 is further back and shows the pool of blood surrounding his body. Exhibit No. 65 shows Richard's body from the right side, and his body is partially obscured by the dining room chairs. Exhibit No. 65 also shows that multiple windows were covered by plywood. Exhibit Nos. 30,

43, and 65 are sufficiently distinct that the trial court's ruling on their cumulative effect is not outside the zone of reasonable disagreement.

Exhibit Nos. 46 and 47 are pictures of the knife in Richard's back. In Exhibit No. 46, the camera's focus is on evidence tag number 19, and the rest of the picture is dark. Exhibit No. 47 is a slightly different viewpoint, and it clearly shows Richard's blood-soaked shirt and the pool of blood surrounding him. Exhibit No. 50 is a close-up of Richard's face, and a ruler is used to show the size of injuries to his face. Exhibit Nos. 53 and 54 are close-up views of Richard's body after he was rolled over onto his side. These photographs show the pool of blood on the ground and his blood-soaked shirt, face, and arm. Appellant objected that Exhibit Nos. 53, 54, and 55 were cumulative, and the trial court sustained his objection to Exhibit Nos. 54 and 55 and admitted only Exhibit No. 53. We cannot conclude that the trial court's ruling on the cumulative effect of Exhibit Nos. 46, 47, 50, and 53 was outside the zone of reasonable disagreement.

**\*9** Appellant also challenges Exhibit Nos. 30, 40, 43, 46, and 47 as cumulative photographs that "depict [Richard's] body with a knife protruding from his back." While Exhibit No. 40 shows a knife protruding out of Richard's back, that is not the main focus of this exhibit. We have already concluded that Exhibit No. 40 shows the location of the victims' bodies in relation to each other and that Exhibit Nos. 30, 43, 46, and 47 were sufficiently distinct because of the differences in viewpoint and magnification. Appellant also challenges Exhibit Nos. 27, 29, 60, 62, 75, and 311 on the grounds that they are cumulative pictures of Peggy's partially naked body. However, we have already determined that these exhibits are sufficiently distinct that the trial court's ruling on their cumulative effect does not fall outside the zone of reasonable disagreement.

Appellant also complains that several autopsy photographs "are cumulative close-up pictures of the knife wounds inflicted upon the Glovers." A medical examiner is entitled to use autopsy photographs to explain his findings related to manner of death, cause of death, time of death, and the number of wounds sustained by each victim. *Long,* 823 S.W.2d at 274. Autopsy photographs that depict the same wounds that are shown in the crime scene photographs are cumulative and have little probative value. *Id.*

Exhibit Nos. 321, 322, and 323 are pictures of Peggy's wounds. Exhibit Nos. 375, 376, 377, 379, 380, 381, 382,

383, and 384 are pictures of Richard's wounds. And Exhibit No. 343 is a close-up view of the knife. The photographs of Peggy's wounds cannot be cumulative of the photographs of Richard's wounds and vice versa. Exhibit No. 321 shows her severed trachea and jugular vein. The medical examiner explained that the trachea is the normal airway to the lungs and used Exhibit No. 323 to show that blood had aspirated into her airway. The cut went across the front of her neck, and Exhibit No. 322 shows the dried out "external mastoidal muscle on the right side" of her neck. Because Exhibit Nos. 321, 322, and 323 show different portions of Peggy's injuries, we cannot conclude that it was error to admit them over Appellant's cumulative objection.

As for the photographs of Richard's wounds, Exhibit No. 343 is a close-up of a ruler next to the knife that was still in Richard's back, but it does not show the rest of his body. Exhibit Nos. 375, 376, and 377 are photographs of defensive wounds on Richard's right hand. Exhibit Nos. 375 and 377 show cuts on the middle and ring fingers, and Exhibit No. 376 shows a side profile of the cut on the middle finger to show the depth and shape of the cut. Although Exhibit Nos. 375 and 377 show the same wounds, the wounds had been cleaned in Exhibit No. 377 and revealed damaged tendons and other soft tissue. Exhibit Nos. 379 through 384 depict various injuries observed during the internal examination of Richard's body.

After comparing the exhibits, we cannot conclude that the trial court abused its discretion when it admitted Exhibit Nos. 343, 375, 376, 377, 379, 380, 381, 382, 383, and 384 because of the different facts gleaned from each picture regarding the cause of death, other injuries, and the condition of the bodies. *See Etheridge v. State,* 903 S.W.2d 1, 21 (Tex.Crim.App.1994) (concluding multiple photographs were not cumulative because each showed something necessary to clearly illustrate the extent of injuries and general condition of body).

Next, we address Appellant's complaint about the "inflammatory" and "gruesome" nature of numerous crime scene and autopsy photographs. At trial, Appellant's only objection to Exhibit Nos. 27, 43, 46, 47, 50, 321, 322, 323, 343, 375, 376, and 377 was that they were cumulative. Appellant's complaint on appeal does not comport with his objection at trial and is, therefore, waived. *See* TEX.R.APP. P. 33.1(a); *Goff,* 931 S.W.2d at 551. However, Appellant did preserve his complaint as to the following exhibits, and we will review the trial court's ruling on the admissibility of them:

Exhibit Nos. 29, 30, 53, 60, 62, 63, 65, 70, 75, 379, 380, 381, 382, 383, and 384.

*10 When we address a complaint that exhibits are inflammatory and gruesome, we must determine whether the trial court abused its discretion when it balanced the following six factors:

> (1) The inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex.Crim.App.2006). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* To evaluate the admissibility of photographs that were alleged to be unfairly prejudicial, we must also consider the number and size of the photographs, whether the photographs are in color, the detail shown, how gruesome the photographs are, whether the body is naked, and "whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment." *Sheffield v. State,* 189 S.W.3d 782, 787 (Tex.Crim.App.2006).

"If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo v. State,* 144 S.W.3d 487, 491–92 (Tex.Crim.App.2004). ' "Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself" because of the concern "that the jury might attribute certain injuries caused by the autopsy to the appellant." *Salazar v. State,* 38 S.W.3d 141, 151 (Tex.Crim.App.2001) (quoting *Rojas v. State,* 986 S.W.2d 241, 249 (Tex.Crim.App.1998)). Often,

the photographs can help the jurors to better grasp the testimony of a medical expert. *Ladner v. State,* 868 S.W.2d 417, 426 (Tex.App.—Tyler 1993, pet. ref'd).

Appellant contends that, because he did not "contest[ ] the extent of the Glovers' injuries nor did he contest the manner by which they were killed" but rather only disputed that "he was the individual who committed these violent murders," the photographs had low probative value and "did not serve to assist the jury in deciding any contested fact in this case." However, our consideration of the State's need for the evidence focuses on the fact of consequence for which it was offered, and whether that fact of consequence is related to an issue in dispute is only one consideration for the State's need. *See Montgomery,* 810 S.W.2d at 389–90.

The crime scene photographs were admitted through the testimony of the first officer to arrive on the scene and the lead homicide detective, and the autopsy photographs were admitted through the medical examiner's testimony. As described above, the crime scene photographs, specifically Exhibit Nos. 29, 30, 53, 60, 63, 65, 70, and 75, documented the crime scene and showed the injuries and positioning of the Glovers' bodies.

*11 The photographs from Peggy's autopsy show the cause of her death, the depth and severity of the wound on her throat, and the injury to her airway. The photographs from Richard's autopsy reveal defensive wounds, bruising on both arms, and bruising beneath his scalp that was not detectable except through the autopsy. Exhibit Nos. 379 and 384 are images of the bruise on an inverted scalp, and Dr. Marc Andrew Krouse, who performed the autopsy, explained where the bruise was located in the picture and stated that it would have been "just above the temporal muscle on the right side of the head." Exhibit No. 384 is a close-up of the bruise.

In addition to his defensive wounds, Richard was stabbed four times in the chest and four times in the back. Two of the chest wounds were fatal. The first fatal stab wound was six inches deep, went through the space between the second and third ribs, and perforated both the pulmonary artery and the aorta. The second fatal stab wound was five and one-half inches deep, went through the cartilage that attaches the fifth rib to the sternum, and perforated the pulmonary artery. Exhibit No. 381 is a photograph of the rib cartilage with the stab wound. Exhibit No. 383 shows the injury to the pulmonary artery. Exhibit No. 382 shows the base of the aorta where there are two deep, penetrating wounds. Exhibit No. 380 is a picture

that shows fluoric hemorrhaging in the chest wall around the two penetrating stab wounds. There is no question that the photographs are gruesome.

Under the first *Gigliobianco* factor, the trial court could have determined that the photographs had probative value because they accurately depicted the crime scene and the bodies of the Glovers and would assist the jury to visualize the crime scene, understand the extent of the injuries, and grasp the reality of the brutal crime committed. *See Paredes v. State,* 129 S.W.3d 530, 539–40 (Tex.Crim.App.2004). Furthermore, the photographs, together with the testimony of the officers and medical examiner, helped to tell the story of how the Glovers were murdered. *Erazo,* 144 S.W.3d at 491–92 (reasoning that photographs are generally admissible when testimony regarding the same matters is admissible). For example, the crime scene photographs show that Richard was wearing slacks and a button-down shirt and that Peggy was wearing a nightgown; this is some evidence of the time of day that the murders likely occurred. Also, the crime scene photographs show that Peggy's body had been dragged from an area where a struggle had occurred, and where she had died, to an area where the windows were covered. Detectives opined that this was done to prevent someone from seeing her body through the uncovered window and to prolong discovery. The probative value of the photographs weighs in favor of admissibility.

The second factor requires us to consider the State's need for the evidence. To assess this factor, a trial court must answer the following questions: "Does the proponent have other available evidence to establish the fact of consequence that the [photographs are] relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute?" *Montgomery,* 810 S.W.2d at 390. Appellant is correct that the manner and cause of death were not disputed, but this is only one of three inquiries to assess the State's need for the evidence.

The strength of the other evidence available to establish what occurred in the Glovers' home was not as strong without the photographs. And the only other evidence of what happened in the Glovers' home, as we have summarized, came from the testimony of the officers and medical examiner. The pictures of the crime scene illustrate what the detectives observed in order to reach their conclusions about the circumstances of the murders, and the photographs aid in an understanding of that. Further, the autopsy photographs illustrated the medical examiner's explanation of the various

wounds and injuries. *See Harris v. State,* 661 S.W.2d 106, 107 (Tex.Crim.App.1983) (admitting photographs that help jury understand doctor's technical language used to describe the victim's injuries is not abuse of discretion). How Richard and Peggy Glover died and the manner of their deaths were facts of consequence. Even though the manner of death was not at issue as to either of the victims, this factor also weighs in favor of admissibility.

**\*12** As to the other factors, Appellant contends that the State used "approximately 150 [crime scene and autopsy] photographs" to impress the jury in an irrational and indelible way because "the Photographs were duplicative, cumulative, and inflammatory." Based on our review of the record, there were approximately seventy-five autopsy photographs and approximately seventy-five crime scene photographs admitted at trial, and sixty-two percent of the crime scene photographs did not show any part of the bodies of either Richard or Peggy Glover. As we discussed in our analysis of the cumulative nature of the exhibits, there is an element in each photograph that is not found in the other photographs, and we have already concluded that the lower court's ruling on the cumulative nature of the photographs was not outside the zone of reasonable disagreement.

Although the photographs are in color and were displayed on a screen for the jury to see, they are not unduly gruesome. Several photographs reveal that Peggy was found with her panties down and her genitals exposed, but only one crime scene photograph actually shows her genitals. Any prejudice that may have resulted from the implication of sexual assault was cured when the medical examiner testified that he found no injuries there. There was no evidence of sexual assault presented to the jury. The autopsy photographs showed the injuries, some with dried blood and some after cleaning, but the gruesome nature of the photographs was a result of the crime and was not caused by the autopsy. The crime scene photographs are emotionally disturbing, but that is because of the circumstances of the crime rather than any particular image depicted in the photographs. We cannot conclude that the complained-of photographs are "so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them." *Fuller v. State,* 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *abrogated on other grounds by Castillo v. State,* 913 S.W.2d 529, 534 (Tex.Crim.App.1995).

Because the photographs and the related testimony adequately explained the State's theory and increased the jury's comprehension, we cannot conclude that the trial court's ruling on the admissibility of the crime scene and autopsy photographs was outside the zone of reasonable disagreement. Appellant's sixth issue is overruled.

We vacate Appellant's capital murder convictions under counts two and three of the indictment because those convictions violate the Double Jeopardy Clause. Accordingly, we reverse the judgments of the trial court as to counts two and three, and we render a judgment of acquittal as to those counts. *See Saenz v. State,* 131 S.W.3d 43, 53 (Tex.App.—San Antonio 2003), *aff'd,* 166 S.W.3d 270 (Tex.Crim.App.2005). We uphold the capital murder conviction under count one, and we affirm the judgment of the trial court as to that count.

Footnotes

1       U.S. CONST. amend. V.

**End of Document**                                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.